489 P.2d 713

**The STATE of Arizona, Appellee,**

v.

**Robert Allen FIERRO, Appellant.**

**No. 2249.**

Supreme Court of Arizona,
In Division.

Oct. 6, 1971.

**480**

Gary K. Nelson, Atty. Gen., by William P. Dixon and John S. O'Dowd, Asst. Attys. Gen., Phoenix, for appellee.

Howard A. Kashman, Pima County Public Defender by Eleanor Schnorr, Deputy Public Defender, Tucson, for appellant.

CAMERON, Justice.

Robert Fierro appeals from a verdict and judgment of guilt to rape and a sentence of not less than 20 nor more than 30 years.

The defendant's appeal raises the following questions:

1. While defendant was in jail for lack of bail on an attempted burglary charge, was it a denial of equal protection to force him to attend lineups for the rape?

2. Was the in-court identification tainted by the allegedly illegal lineup?

3. Was error committed when the court allowed testimony that defendant had committed a second rape three months after the rape for which he was being tried?

4. Did the court err in denying a motion to poll the jurors as to whether they had read in the local newspaper that defendant had a prior conviction of rape?

Defendant allegedly raped a housewife on 15 January 1970 in her home in Tuscon at around 12:00 noon. The victim testified that a masked man, armed with a gun, accosted her in her carport and told her she wouldn't get hurt because he only wanted her car. He than forced her to enter the house where he tied her hands, blindfolded her, cut her bra, and raped her.

Another rape was introduced into testimony at the trial, so that rape should be discussed, also. At 9:30 P.M. on 12 April 1970, three months after the rape in question, a student was accosted by a masked man armed with a gun as she attempted to get out of her car and into her Tucson apartment. The man told the student that he had committed an armed robbery and needed her car to get away. The man forced her to drive out to the desert made her get out of the car, and blindfolded her. At this point he admitted to the victim that he hadn't committed an armed robbery and that he had brought her to the desert to rape her, which act he committed shortly thereafter. Before the present case came to trial, defendant Fierro was found guilty of raping the student. He appealed that guilty verdict.

## WAS DEFENDANT DENIED EQUAL PROTECTION WHEN HE WAS PLACED IN TWO RAPE LINEUPS WHILE IN JAIL FOR A SEPARATE DISTINCT CRIME?

On 27 April 1970, defendant Fierro was in jail, unable to raise bail. The crime he was being held for was attempted burglary (he had entered a home with a woman in it, but had been apprehended fairly quickly). On 27 April, the police constructed a lineup for four witnesses who later testified at the trial, and on 29 April the police constructed another lineup for both the victim in this case, the student victim, and one witness. At both lineups, four prisoners were selected to stand with the prisoner Fierro, who, while not yet charged with either of these rapes, was the prime suspect. At both lineups Fierro had counsel present and at both lineups he protested vigorously about his inclusion. Shortly after the lineups in which Fierro was identified, complaints were filed against him for the two rapes.

Defendant argues that if he had been a man of greater means and had been able to raise bail on his attempted burglary charge, he would not have been available for the rape lineups. If he had been a man of means he would have been out of jail, and the State would have had to show probable cause to arrest him for the rapes before he could be forced into the rape lineups.

Defendant's only real authority on this point is Application of Mackell, 59 Misc.2d 760, 300 N.Y.S.2d 459 (1969). In Mackell, supra, the Supreme Court of Queens County, New York, refused to grant the District Attorney power to shave a prisoner's head and place him in a lineup, since the prisoner was in custody on an entirely unrelated charge and had not been arrested on the charge in issue.

Mackell goes against the only other case in point, Rigney v. Hendrick, 355 F.2d 710 (3rd Cir. 1965), reh. den. 1965, cert. den. 384 U.S. 975, 86 S.Ct. 1868, 16 L.Ed.2d 685 (1966). In that, the Third Circuit held

that the prisoners' equal protection was not abridged when they were used in lineups for unrelated crimes.

. A common sense view of the equal protection clause dictates that defendant's argument must fail on at least two counts. First, the State can and does use an informal identification technique on free suspects that is both practically and theoretically more injurious to the suspect's rights than a formal lineup. We are referring, of course, to the practice of taking the witnesses to "spot" the suspect. As the Court of Appeals for the District of Columbia noted in Wise v. Murphy, 275 A.2d 205, 213 (C.A.D.C.1971), "Such possibilities come to mind as arranging for the woman to go to the subject's home, place of employment, or other location that he frequents." About this practice the court concluded at 213, "Aside from the obvious suggestibility inherent in such procedures, it is apparent that the subject and his counsel are deprived of meaningful cross-examination as to the verity of any courtroom identification." The lineup, being properly conducted and with counsel present, is more protective of defendant's rights than the practice discussed above and we do not feel it results in a denial of equal protection.

Defendant's position also fails because the supposed discrimination against him—he need not be arrested on the new charge, while his free counterpart must be—goes mainly to the protection of the suspect's physical liberty, which a prisoner doesn't have. As Chief Justice (then Circuit Judge) Burger, concurring in Adams v. United States, 130 U.S.App.D.C. 203, 399 F.2d 574, 581 (1968), put it:

"The reason for requiring probable cause for an arrest is to protect against arbitrary interference with liberty. When the condition of custody already exists, however, the constitutional requirement of an arrest on probable cause would be totally superfluous—a sheer ritual serving no legitimate protective function."

Thus, we see that defendant was not discriminated against to any appreciable degree by the lineups, and the trial court was correct in holding the lineups constitutional. (See § 13–1424 A.R.S. enacted after the lineups in this case.)

## WAS THE IN-COURT IDENTIFICATION TAINTED BY THE ALLEGEDLY ILLEGAL LINEUPS?

■ The trial court held, assuming the lineups were unconstitutional, that the in-court identifications were not tainted. We agree with the trial court's holding.

The principal argument defendant raises regarding the in-court identifications concerns three witnesses' confusion about the defendant's height. All three testified prior to the lineups that the rapist was less than 5′ 11″. Actually, he is slightly over 6′. The defendant argues that if it were not for the lineup, the witnesses may not have identified him at trial.

A discrepancy between pre-lineup descriptions and the defendant's actual description is one of the factors mentioned in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), as a guide in determining whether or not an in-court identification is tainted by an illegal lineup. But virtually every other guide in Wade points to the trial court's decision that the in-court identifications were not tainted. None of the witnesses failed to identify defendant at any time, the time lags were not great, and all had reasonably good or very good opportunities to witness the rapist (the rapist had circled the victim's house in his car for at least a week). More than adequate evidence supports the trial court's holding that the identifications were not tainted by the allegedly unconstitutional lineup.

## WAS ERROR COMMITTED WHEN THE COURT ALLOWED TESTIMONY THAT DEFENDANT HAD COMMITTED A SECOND RAPE THREE MONTHS AFTER THE RAPE FOR WHICH HE WAS BEING TRIED?

■ The trial court allowed into evidence, over defendant's objections, testimony concerning the student's rape, which occurred three months after the rape at issue. We sustain the trial court's determination of this matter. Justice Udall recently stated:

"It is now a well-established principle that in the prosecution of one accused of a particular offense evidence which tends to show that the accused has or may have committed some other crime entirely distinct from that for which he is now on trial is generally inadmissible. State v. Hughes, 102 Ariz. 118, 426 P.2d 386 (1967); State v. Byrd, 62 Ariz. 24, 152 P.2d 669 (1944); State v. Little, 87 Ariz. 295, 350 P.2d 756 (1960). To this general rule, however, there are a few well-known exceptions which are competent to prove the specific crime charged when it tends to establish: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of the person charged with the commission of the crime on trial. State v. Byrd, supra; State v. Hardin, 99 Ariz. 56, 406 P.2d 406 (1965); State v. Hughes, supra; State v. DeVinney, 98 Ariz. 273, 403 P.2d 921 (1965) * * *." State v. Schmid, 107 Ariz. 191, 484 P.2d 187, 190–191 (1971).

In the case at hand, evidence of the student rape was given to prove identity. (The trial court refused the State's attempt to have the evidence admitted for the purpose of proving the accused's specific emotional propensities. But see State v. McDaniel, 80 Ariz. 381, 298 P.2d 798 [1956].) It is difficult to conceive of a case in which identity evidence would be more useful. Two rapes were committed in the same county within three months. The

rapist in both instances wore a mask and gloves and carried a gun. He told both victims their cars were needed. He tied the hands of both victims and blindfolded them before having one act of sexual intercourse with each. In both cases the rapist left immediately after the rape without untying the victims and in neither case was there any brutality, and the victims described the clothing of the assailant in very similar terms.

■ When one further considers the wide discretion left to the trial court in admission of separate criminal acts, State v. Finley, 85 Ariz. 327, 338 P.2d 790 (1959), there can be no doubt that the the trial court must be upheld on admitting evidence of the student's rape.

DID THE COURT ERR IN DENYING A MOTION TO POLL THE JURORS AS TO WHETHER THEY HAD READ IN THE LOCAL NEWS-PAPER THAT DEFENDANT HAD A PRIOR CONVICTION OF RAPE?

■ Defendant asserts that the court erred in not polling the jurors as to whether they had read in a Tucson newspaper that defendant had already been convicted of the student's rape. We cannot agree.

We agree with the defendant that he could have been prejudiced if the jurors had found out about his conviction for the student's rape, but there is no evidence that any juror read the article in question. At the outset of the trial the court admonished the jurors to disregard news articles concerning the trial and not read such articles. The defendant later made a motion for mistrial and for polling the jury on the question of the news articles. No evidence was offered in support of the motion other than the articles themselves. The trial judge denied both motions and gave the following reasons for denying the motion to poll the jury:

"What you are in effect doing is requesting that I poll the jurors to see whether they have violated the instructions given to them."

The above reasoning is identical to that applied by this court in another case:

"In the instant case there is not one scintilla of evidence that any juror read the article in question. If a trial court is required to poll a jury on one aspect of its admonition at the whim of counsel with no proof of violation, then it must also poll a jury on each and every aspect of its admonition whenever counsel request it.

"There is no presumption that. jurors will betray their trust. Where a jury has been clearly admonished not to read newspaper accounts of the trial, the refusal of the trial judge under the circumstances of this case to permit counsel to interrogate them on the speculative possibility that one or all of them might have read newspaper accounts is not error. The granting of defendant's request that jurors be interrogated during trial as to whether they have read newspaper accounts rests in the sound discretion of the trial court. (citations omitted) Under the circumstances of this case the trial court was fully within its discretion in refusing counsel's request." State v. Hilliard, 89 Ariz. 129, 134, 135, 359 P.2d 66, 70 (1961).

Defendant seeks to distinguish Hilliard, supra, by the fact that the articles in that case referred neither to a former conviction nor to a crime that was connected with the one for which defendant was then on trial. The attempted distinction is not persuasive, for in both cases the articles, if read, were prejudicial and the issue in both cases was the burden on the court to determine if they were read. We see no way to distinguish and no reason to disturb our decision in Hilliard, supra.

Judgment affirmed.

STRUCKMEYER, C. J., and HAYS, V. C. J., concur.