546 P.2d 375

STATE of Idaho, Plaintiff-Respondent,

v.

Steven Ray MORRIS, Defendant-Appellant.

No. 11891.

Supreme Court of Idaho.

Feb. 5, 1976.

Vernon K. Smith, Boise, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., Lynn Thomas, Deputy Atty. Gen., Gordon S. Nielson, Senior Deputy Atty. Gen., Boise, for plaintiff-respondent.

DONALDSON, Justice.

Defendant-appellant, Steven Ray Morris, was arrested on December 28, 1974 and charged with robbery under I.C. § 18–6501. The charges stemmed from an incident on December 24, 1974. At approximately 5 a. m. that morning, the duplex apartment of James Thornburg was broken into by two persons, one of whom was carrying a shotgun. Thornburg was present at the time and visiting with two friends, Henry Heckathorn and Tom Archer. Both Thornburg and Heckathorn were beaten by the intruders. Archer managed to escape out the back window.

Thornburg's next door neighbor, Craig Harris, heard the commotion and called the police. When the police arrived Thornburg was on the front lawn and two persons were observed standing on the front porch. One of these had a nylon stocking pulled over his face and ran immediately from the scene. He was pursued for several blocks by a police officer. However, the officer was unable to apprehend him. The other person also attempted to run from the scene but was apprehended and taken to the police station. He was released after being identified as Henry Heckathorn, one of the victims.

Another person, identified as William Junior Hughes, was apprehended as he came out of a window in the apartment. Hughes later pled guilty to robbery. Thornburg's Bulova watch, three rings and $11.96 in currency were found on Hughes.

At trial of this matter, Thornburg testified on cross-examination that a similar incident had occurred the previous Sunday, December 22, 1974 at about 5:00 a. m. His testimony was supplemented by that of Craig Harris. The testimony indicated that Thornburg was in his apartment with at least one other person when two intruders broke in, one of them carrying a shotgun. On this occasion Craig Harris heard the commotion and came over. He and the other occupants were beaten or roughed up but the incident was not reported to the police.

On appeal the defendant alleges that evidence of the prior incident was improperly admitted. He also claims that the identifi-

cation of him by the victim Thornburg was the result of a prejudicially suggestive photographic lineup. Neither of these matters were objected to at trial and defendant claims that this failure to object, together with the lack of pretrial discovery and failure to request proper instructions, amounted to incompetence on the part of trial counsel. Furthermore, the defendant alleges the trial court erred when it failed to make limiting instructions on its own and when it failed to instruct the jury that assault and battery was a lesser included offense. Finally, he claims the district court judge made certain prejudicial remarks in the presence of the jury and asserts there was not sufficient evidence to sustain the verdict. Defendant is represented by new counsel on appeal and where applicable we will consider his assignments of error on the merits despite the lack of objection at trial since they relate to the competence of trial counsel.

■■■ "[E]vidence of other crimes is admissible when relevant to prove * * * the identity of the person charged with the commission of the crime on trial * * *." *State v. Hatton,* 95 Idaho 856, 522 P.2d 64 (1974) citing *State v. Shepherd,* 94 Idaho 227, 486 P.2d 82 (1971). "Evidence of other crimes committed by the defendant is relevant to the issue of identity if it discloses a distinctive *modus operandi* common to the other crimes and the crime with which the defendant is charged [citations omitted]." *State v. Hatton, supra.*

■■ The defendant here was identified by two witnesses, both Thornburg and Harris, as one of the perpetrators of the prior incident. That incident was similar in virtually every respect to the crime charged. In both, two men broke into Thornburg's apartment, in both one of the men carried a shotgun, both crimes took place at about 5:00 a. m., and in both the occupants were beaten. These similarities amount to a distinctive *modus operandi.* The introduction of evidence concerning the prior incident was not the result of an "over zealous" prosecution as the defend-

ant suggests, but was relevant to the issue of identity and properly admitted.

Apart from his connection with this prior incident, the defendant was identified with the crime charged only by the in-court identification by Thornburg. Defendant argues this identification was tainted by an improper pretrial photographic lineup. The record reveals that prior to trial the defendant was identified in a mugshot lineup prepared by the police. The lineup was described as follows by Officer James Merritt:

"I had spoken with Mr. Thornburg and Mr. Harris, and the only leads they could give me as to the identity of a second suspect would be that they believed his name was Steve, and that he lived in Middleton.

"I was also brought, or my attention was brought to another possible suspect known as Roger Collins.

"Subsequently I pulled a photograph of Steve Morris from a previous investigation. I also pulled photographs of Mr. Morris, or Mr. Collins, together with several other photographs and prepared a mug lineup and requested Mr. Thornburg and Mr. Harris to return to the Police Station, [where] I spread these photographs out and asked if they were able to identify any of these pictures that would depict a possible second suspect.

"Mr. Harris chose that photograph of Steve Morris as a person that he knew only as Steve whose last name he believed to be Gardner, but wasn't sure. Mr. Harris stated that this was the second suspect.

"Mr. Thornburg was then shown the same series of photographs.

"Mr. Thornburg also stated that this was the subject that was the second suspect with Mr. Hughes.

"During the photo lineup Mr. Collins was eliminated as a suspect."

Defendant argues that the record establishes that he was identified by one witness in the presence of another. He claims that

the identification by Harris, who did not see defendant on the December 24 incident, affected Thornburg's subsequent identification of defendant as a perpetrator in both incidents.

We stated in *State v. Grierson,* 95 Idaho 155, 504 P.2d 1204 (1972), that "law enforcement officers should avoid the practice of having witnesses view a lineup and make identifications in the presence of one another." The same is true where the witnesses view a photographic lineup. The faulty procedure may well render evidence of the photographic lineup inadmissible, *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), or taint later identifications where "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Annot.* 39 A.L.R.3d 1000, § 6 (Supp.1975).

In the present case, however, the record fails to establish that the two witnesses viewed the photographs simultaneously, nor does the record establish any other "impermissibly suggestive" procedure. Hence, we find no error.

Nor does the remark by Officer Merritt that he pulled the defendant's photograph from a previous investigation necessitate reversal. This remark, taken together with all the evidence, was not prejudicial. *State v. Tisdel,* 94 Idaho 329, 332, 487 P.2d 692 (1971); I.C. § 19–3702.

It is clear then that trial counsel's failure to object to the photographic lineup procedures or introduction of evidence of the prior incident do not amount to incompetence. No standard of trial court competency requires counsel to make needless objections only to have his objections overruled. To do so "risks alienating the jury even if he does not test the patience of the presiding judge." *Williams v. Beto,* 354 F.2d 698, 703 (5th Cir. 1965).

Defendant argues, however, that trial counsel's "failure to perform pretrial discovery procedures" establishes counsel's incompetence. He cites our recent decision in *State v. Tucker,* 97 Idaho 4, 539 P.2d 556 (1975). In that decision we recognized that inadequate preparation prior to trial has been held to be sufficient grounds to constitute a denial of the right to counsel. Here, as in *Tucker,* the record indicates no discovery motions were filed. It is devoid of any direct references to trial counsel's pretrial investigation or lack thereof. It should be noted, however, that in the present case the defendant was afforded the benefit of a preliminary hearing.

In *Tucker,* we held the facts sufficient to warrant further evidentiary hearings on trial counsel's competence. The present case is distinguishable. *Tucker* required that the defendant, "in most cases, must make a showing that the conduct of counsel contributed to the conviction or to the sentence imposed." On an appeal this requirement can only be met if defendant, as in *Tucker,* identifies evidence which if discovered could have benefited him. *See State v. Kraft,* 96 Idaho 901, 539 P.2d 254 (1975). Without identification of such evidence we are prevented from making objective analysis of defendant's pretrial techniques.

Justice Bakes, specially concurring in *State v. Kraft, supra,* pointed out that the question of the competency of counsel is a question usually best reserved for post conviction proceedings. He stated:

"The question of competency of counsel is an extremely complex factual determination which, in all but the most unusual cases, requires an evidentiary hearing for determination. * * * The resolution of those factual issues for the first time upon appeal, based upon a trial record in which the competency of counsel was not at issue, is at best conjectural."

Therefore, on the present record, we cannot presume trial counsel's incompetence

from his failure to file pretrial discovery motions, particularly where there was a full preliminary hearing.

█ Defendant concedes that the trial counsel's failure to request explanatory instructions concerning evidence of the prior incident and on the issue of identity was arguably strategically or tactically motivated. We stated in *Tucker* that "This court will not attempt 'to second guess strategic and tactical choices made by trial counsel.'" citing *United States v. DeCoster*, 159 U.S. App.D.C. 326, 487 F.2d 1197, 1201 (1973). Defendant asserts, however, that considered together, counsel's conduct was prejudicial. We disagree and on the record now before the Court find trial counsel's conduct to be within the bounds of competency.

█ Under the facts of this case it was not the duty of the trial court, on its own motion, to give explanatory instructions. These explanatory instructions are not "stock instructions" embracing fundamental principles of law applicable in all criminal cases and therefore need only be given where requested. *State v. Beason*, 95 Idaho 267, 506 P.2d 1340 (1973); *State v. Freeman*, 85 Idaho 339, 379 P.2d 632 (1963); I.C. § 19–2132.

█ The defendant argues that the trial court did have a duty to instruct the jury on assault and battery. I.C. § 19–2312 provides:

"The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment, or of an attempt to commit the offense."

In *State v. Boyenger*, 95 Idaho 396, 509 P.2d 1317 (1973) this Court held that, under the statute, "the burden is upon the defendant to request the court to instruct on lesser included offenses." The Court recognized that where the prosecution has not asked that the defendant be convicted of a lesser offense the defendant, as a trial tactic, may not desire any instruction regarding lesser included offense. *See also State v. Kraft, supra; Annot.*, 58 A.L.R.2d 808, 820 § 6 (1958). Only after the defendant has requested an instruction must the trial court determine whether the offense is "necessarily included" in the offense charged. Consequently, the trial court did not err in failing to instruct on assault and battery.

Finally, the defendant objected to a remark made by the trial judge during the course of the trial. The defendant had testified that he had earlier been with a person whom he identified as Billy. The court then asked, "Is he the one that is— the testimony shows pled guilty to this robbery." Defendant argues that there was no prior testimony of a guilty plea by Hughes and asserts the trial judge's remarks were prejudicial.

The record contains the following interrogation of Officer Merritt by defendant's own counsel:

"Q Mr. Hughes, the—person who came out the window and was caught with the merchandise [in] his possession, has pled guilty to this crime, has he not?

"A I have been told that he has pled guilty. I have not seen anything with that on it as yet, counselor."

In *State v. Polson*, 81 Idaho 147, 339 P.2d 510 (1959) this Court held:

"The true tests, to determine if the remarks of a trial judge are prejudicial, are whether those remarks constitute comment on the weight of the evidence * * * or indicate an opinion of the court as to the guilt or innocence of the defendant, or tend to ridicule counsel or reflect upon his conduct in handling the case * * * or on the other hand, whether the remarks and conduct of the trial judge are intended only to make points clear or elucidate the matter under consideration * * *."

█ Here, contrary to the defendant's argument, there had been previous testimony concerning Hughes plea. Indeed, this

testimony was in response to a question put by defendant's own trial counsel. In this context the trial judge's remark may well have been intended only to clarify who the Billy was that the defendant referred to. Certainly the remarks do not indicate an opinion of the court as to the guilt or innocence of the defendant. Consequently we find no error.

A review of the record indicates the evidence was sufficient to sustain the verdict. We affirm the judgment of the district court.

McQUADE, C. J., and McFADDEN, SHEPARD, and BAKES, JJ., concur.