796 P.2d 1007

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Larry Joe MARTIN, Defendant–Appellant.**

No. 17730.

Supreme Court of Idaho.

Aug. 2, 1990.

Stewart A. Morris, Boise, for defendant-appellant.

Hon. Jim Jones, Atty. Gen., Michael J. Kane, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

BAKES, Chief Justice.

Defendant Larry Joe Martin appeals his conviction and sentence for second degree burglary and attempted rape as enhanced pursuant to the repeat sex offender statute. Martin argues that the trial court committed reversible error by allowing testimony from two of Martin's previous sex offense victims. Martin asserts that (1) the details of the prior attacks were not so similar to those of the charged crime so as to assist in proving identity, and (2) the circumstances of those attacks were too remote, in that they occurred ten and twelve years before the alleged attempted rape. Martin also argues that the sentence imposed on him of twenty to thirty years in prison is excessive and unduly harsh.

## I

## FACTS

On October 1, 1987, a young woman was accosted just inside of her apartment by a man wearing a Halloween mask, gloves, and carrying a knife. A struggle ensued. The man held the knife against the young woman's throat and threatened to kill her if she didn't submit to him. The knife injured her. He ripped open her blouse, touched her private areas, and announced that he was going to rape her.

Although the attacker's face was covered by the mask, the young woman recognized the man as Larry Martin, an acquaintance of her brother. The young woman's brother and Martin met in prison and Martin had stayed with the two for a week in the young woman's apartment after his release. During this time the brother showed Martin how to "jimmy" the bolt on the back door. After Martin completed his stay, the young woman began receiving obscene telephone calls. A couple of weeks before the attack, the caller said he knew that her brother was no longer living in the apartment. During the attack, the young woman recognized the attacker's voice as the same as the caller's and as Martin's. At the time of the attack she also recognized Martin's clothing, his blue jeans, white "prison-type" tennis shoes and a country-western shirt which he often wore when he was staying in the victim's apartment.

The young woman told the attacker that she knew who he was, that he was going to go back to prison, that her brother would soon arrive for dinner, and that he had better leave. A car then drove up and the attacker looked out of the window and announced that the car was not her brother's.

The attacker eventually tied the young woman's hands together. The young woman screamed when a friend knocked on the door. The attacker beat her, but she continued to scream. Finally, the attacker fled through the back door and the young woman was able to let her friend in. Later, a knife, identified as one of her kitchen knives, was found forty to fifty feet behind the apartment. Apparently, no other object was taken from the apartment.

At trial Martin was charged with second degree burglary and attempted rape. The state also charged Martin with being a repeat sex offender as a result of having been convicted of one prior sex offense within the past ten years. Martin unsuccessfully sought a motion in limine to bar testimony concerning two prior sex offense convictions. At trial the state offered testimony from Martin's two previous victims, the victim of Martin's 1977 assault with intent to commit rape conviction and the victim of Martin's 1979 rape conviction. A limiting instruction was given to the jury outlining the only narrow purpose for which they could consider the two women's

testimony, *i.e.*, to prove identity. No objection is raised by Martin as to the adequacy of that instruction.

After the jury found Martin guilty of both counts of second degree burglary and attempted rape, Martin pleaded guilty to the repeat sex offender charge. The trial court imposed a thirty-year sentence with a twenty-year minimum for rape as enhanced by the repeat sex offender statute, and a concurrent five-year sentence, two-year minimum, for second degree burglary.

## II

## MARTIN'S PRIOR SEX OFFENSES

The first issue we address is whether the trial court committed error by denying Martin's objection to the testimony from the victim of Martin's 1977 assault with intent to commit rape conviction and the victim of Martin's 1979 rape conviction. Martin asserts that the admission of such evidence violated I.R.E. 404(b) [1] which generally bars evidence of other crimes and I.R.E. 403 [2] which bars otherwise relevant evidence if its prejudicial effect substantially outweighs its probative value. The trial court concluded that the evidence was relevant because it tended to prove the identity of Martin as the attacker in the present case based on the significant similarities in the 1987 attack and Martin's 1977 and 1979 attacks. The trial court further found that the probative value of this evidence was not substantially outweighed by any unfair prejudicial effect. I.R.E. 403. Martin claims that the trial court abused its discretion in balancing the relevance of the testimony against the prejudicial effect. Martin also argues for the first time on appeal, that evidence of the two prior attacks was so remote in time as to make it irrelevant or unfairly prejudicial for the purpose for which it was offered, namely, to identify the culprit in the 1987 attack.

I.R.E. 404(b) provides generally that evidence of other criminal acts or offenses is inadmissible to "prove the character of a person in order to show that he acted in conformance therewith." *State v. Needs*, 99 Idaho 883, 591 P.2d 130 (1979). However, I.R.E. 404(b) provides that such evidence may be admissible when relevant to establish, among other things, the identity of the person charged with the commission of the crime. I.R.E. 404(b); *State v. Wrenn*, 99 Idaho 506, 584 P.2d 1231 (1978). "Evidence of other crimes committed by the defendant is relevant to the issue of identity if it discloses a distinctive *modus operandi* common to the other crimes and common to the crime in which the defendant is charged." *State v. Morris*, 97 Idaho 420, 422, 546 P.2d 375, 377 (1976); *State v. Abel*, 104 Idaho 865, 664 P.2d 772 (1983); *State v. Hatton*, 95 Idaho 856, 522 P.2d 64 (1974). Even if the evidence is deemed relevant for the purposes of I.R.E. 404(b), the trial court may exclude the evidence if "its probative value is *substantially* outweighed by the danger of unfair prejudice" to the defendant. I.R.E. 403 (emphasis added); *State v. Roach*, 109 Idaho 973, 712 P.2d 674 (Ct.App.1985). "[T]he admissibility of such evidence is within the discretion of the trial judge." *State v. Abel*, 104 Idaho 865, 869, 664 P.2d 772, 776 (1983); *State v. Thomas*, 94 Idaho 430, 489 P.2d 1310 (1971).

Here, the trial court specifically found that there were "sufficient similarities" between the 1977 and 1979 attacks and the 1987 attack to make the testimony of the 1977 and 1979 victims relevant. Tr., Vol. I, p. 23. The trial court also found that the 1977 and 1979 victims' testimony "would be

---

1. I.R.E. 404(b) reads as follows:
    Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

2. I.R.E. 403 reads as follows:
    Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

probative to the question of identity sufficient to outweigh the prejudice" to Martin. *Id.* Our task on appeal is to determine whether the trial court clearly abused its discretion in allowing the 1977 and 1979 victims to testify concerning the circumstances surrounding Martin's prior sex offenses. We first consider whether the testimony sufficiently supports the trial court's determination that it is relevant to the issue of identity, *i.e.*, whether the testimony sufficiently "discloses a distinctive *modus operandi* common to the other crimes and common to the crime in which the defendant is charged." *State v. Morris*, 97 Idaho 420, 422, 546 P.2d 375, 377 (1976). We then determine whether the probative value of the testimony is substantially outweighed by the danger of unfair prejudice to the defendant.

### A. Relevancy—*modus operandi*

█ "*Modus operandi* is generally a means of proving the identity of the perpetrator of the crime charged, by demonstrating that the defendant had committed in the past other crimes sharing with the present offense features significantly unique to make it likely that the same person committed the several crimes." *People v. Sam*, 71 Cal.2d 194, 77 Cal.Rptr. 804, 454 P.2d 700, 705 (1969); *Coleman v. State*, 621 P.2d 869, 874, n. 4 (Alaska 1980); *Nester v. State*, 75 Nev. 41, 334 P.2d 524 (1959); E. Cleary, McCormick on Evidence § 190 at 451 (2d ed. 1972); R. Lempert and S. Saltzburg, A Modern Approach to Evidence, 218–19 (1977). While it is important that the evidence bear a high degree of similarity in order to show a *modus operandi*, the circumstances of the prior offenses need not be identical to those of the crime charged. *State v. Breazeale*, 238 Kan. 714, 714 P.2d 1356 (1986), *cert. denied*, 479 U.S. 846, 107 S.Ct. 164, 93 L.Ed.2d 102 (1986); *State v. Roscoe*, 145 Ariz. 212, 700 P.2d 1312 (1984), *cert. denied*, 471 U.S. 1094, 105 S.Ct. 2169, 85 L.Ed.2d 525 (1984).

█ Here, there are many significantly unique features which were present in Martin's 1977 and 1979 sex offenses as well as in the 1987 sex offense. From these similarities the trial court concluded that the testimony of the 1977 and 1979 victims was relevant because the testimony tends to demonstrate that Martin was the person who committed the 1987 sex offense.

Martin's unique method of committing sex offenses is apparent from the circumstances in which he victimized one young woman in 1977 and another young woman in 1979. In December, 1977, Martin assaulted a young woman with intent to commit rape. The victim was young, unattached and acquainted with Martin. Martin forced his way into her residence through the window and surprised his victim. Martin wore a stocking mask in an attempt to conceal his identity. Using a knife that he had taken from the victim's kitchen, Martin held the knife to the young woman's throat and threatened to kill her. The knife injured her. Martin forced the young woman to allow him to attempt sexual intercourse with her. Martin then fled the scene, leaving the knife on the kitchen counter. Apparently, no objects were taken from the residence. Prior to the attack the victim received anonymous obscene telephone and written messages. Martin later confessed to this crime and was incarcerated from December, 1977, until release with probation in June, 1979.

In July, 1979, one month after being released, Martin raped a young woman who was also unattached and acquainted with Martin. Martin forced his way through a kitchen window and into the young woman's bedroom as she slept in her parent's house. Martin wore a stocking cap over his face in an attempt to conceal his identity. He also wore gloves. Holding a knife to her throat, Martin threatened to kill the young woman if she was not quiet. The knife injured her. Martin then raped the young woman and fled as she screamed. Martin discarded the knife, which he had taken from the victim's parents' kitchen. Apparently, no object was taken from the residence. Martin was identified in a voice line up and convicted of rape. He was incarcerated for eight years until July, 1987. Within two months of his

release he committed the present sex offense.

By comparing the 1977 and 1979 sex offenses with the 1987 offense, the trial court found that there were significant similarities among the offenses and concluded that the circumstances of Martin's earlier sex offenses indicated a *modus operandi,* and that the testimony was highly relevant to the issue of identity in the present case. Martin's criminal *modus operandi* is evident in each of the attacks.

(1) All were rape-type cases.

(2) All involved young, unattached women.

(3) All victims knew Martin.

(4) All rapes occurred in the victim's residence.

(5) All victims were surprised by their assailant.

(6) The assailant always wore some type of facial covering.

(7) The assailant always forced his way into the residence.

(8) The assailant always used a kitchen knife to perpetrate the crime.

(9) The knife always came from the victim's kitchen.

(10) The assailant always left the knife behind when fleeing.

(11) Apparently, the assailant always left without taking objects from the residence.

(12) The assailant always placed the knife by the victim's throat to perpetrate the crime.

(13) The assailant always threatened to kill the victim if she did not comply with his desires.

(14) The victims were all injured by the knife.

Additionally, the assailant in the 1979 and 1987 attacks wore gloves. The assailant in the 1977 and 1987 attacks preceded the attack with a series of obscene messages. Upon consideration of the many similarities, some quite unique, *e.g.,* the fact that the intruder wears a mask and holds a young woman's kitchen knife to her throat during a forcible sex offense and then discards the knife while fleeing apparently without taking other objects, we conclude that the trial court did not abuse its discretion in concluding that the identification testimony from Martin's 1977 and 1979 sex offense victims was relevant testimony under I.R.E. 401 and 404(b).

Other jurisdictions, when faced with a somewhat similar set of factual circumstances found evidence of prior criminal and wrongful activity to be relevant and admissible for the purpose of proving the identity of a sex offense assailant. In *State v. Breazeale,* 238 Kan. 714, 714 P.2d 1356 (1986), *cert. denied,* 479 U.S. 846, 107 S.Ct. 164, 93 L.Ed.2d 102 (1986), the Supreme Court of Kansas found that there were sufficient similarities present to allow the introduction of six previous sex offenses, two in 1972 in Colorado and four in 1982 in Kansas, where (1) each victim was a young, white woman, (2) each victim was at home alone, (3) the perpetrator entered the residence through the front door, often by trickery, other times by simply opening an unlocked door, (4) each time the perpetrator held a small gun to the victim's head and forced her to disrobe, (5) the perpetrator then forced the victim to engage in sexual intercourse or oral sex, (6) the perpetrator never struck the victims nor fired his gun, (7) the perpetrator took no money or property from the victim's home, (8) the incidents occurred during daylight. The Kansas court was persuaded that there was sufficient evidence of a *modus operandi* even though there were some dissimilarities, *e.g.,* in the 1972 Colorado incidents the perpetrator wore sunglasses, while in the 1982 Kansas incidents the perpetrator wore a ski mask and a hooded sweatshirt.

In *State v. Thomas,* 110 Ariz. 106, 515 P.2d 851 (1973), testimony from three victims of defendant's prior sex offenses was allowed over objection from defendant. The Supreme Court of Arizona affirmed the trial court's exercise of discretion in allowing the evidence to prove the defendant's identity or *modus operandi.* The court wrote:

An examination of the record reveals that the testimony of the witnesses established that a similar *modus operandi* was used in each assault. The facts

indicate that the assailant must have conducted extensive surveillance of his victims before he attacked them. The crimes all took place in the homes of the victims. The geographical location of the crimes of the crimes was either in the defendant's neighborhood or in areas where he previously resided. The record also shows that the assailant either attempted to or actually succeeded in covering the faces of the victims. In three of the four rapes the assailant concealed his own face. In those cases where the victim had infant children present in the home, the assailant threatened to harm the children unless the mother cooperated. In cases where there were no children present the assailant threatened the victim with a knife. In all the attacks the assailant experienced a pronounced personality change after the rape was committed and expressed concern over the victim's comfort and enjoyment. Finally, in every case the witnesses positively identified the defendant as their attacker. Thus the testimony of the three witnesses was clearly admissible in order to establish both a common *modus operandi* and the identity of the assailant.

515 P.2d at 853.

In *Coleman v. State*, 621 P.2d 869 (Alaska 1980), *cert. denied*, 454 U.S. 1090, 102 S.Ct. 653, 70 L.Ed.2d 628 (1981), the Supreme Court of Alaska upheld the trial court's decision to allow testimony concerning a prior rape for which the defendant was convicted. The court wrote:

It is also our opinion that the evidence in question showed that the prior rape and the rape of B.E. were sufficiently similar and unusual in their common pattern to constitute a *modus operandi* probative of Coleman being the assailant in both instances. The testimony showed the two crimes shared common elements in the race and age of the victims, the situs chosen for the attack, the manner of subduing the victim, the type of intercourse which occurred, and the behavior of the assailant following the attack. Both victims were relatively young Caucasian women, and were on foot near a wooded area when attacked. Each indicated that the first awareness of the assailant's presence was the sound of running footsteps behind her, and that the first realization that she was being assaulted was when the attacker placed his arm around her throat, choking her. In both instances, the attacker rapidly propelled the victim from behind, with his arm still around her throat, into the woods. In both instances oral intercourse was performed as well as an effort at vaginal intercourse (the prior rape also involved anal intercourse). Following both attacks the assailant discussed whether the victim would report him to the police, and allowed the victim to walk away. These characteristics are not so unique as to constitute a "signature crime," as one commentator suggests should be required to prove like identity, nor is each of the above common features material standing alone. But a review of cases in this and other jurisdictions indicate that the similarities in the attacks, taken together, compare favorably with the other instances where evidence of prior rapes has been held properly admitted for the purpose of proving identity.

621 P.2d at 875 (footnote omitted). *See also State v. Roscoe*, 145 Ariz. 212, 700 P.2d 1312 (1984), *cert. denied*, 471 U.S. 1094, 105 S.Ct. 2169, 85 L.Ed.2d 525 (1984); *State v. Fierro*, 107 Ariz. 479, 489 P.2d 713 (1971); *People v. Youngs*, 665 P.2d 143 (Colo.App.1983), *affirmed*, 707 P.2d 360 (1985); *State v. Churchill*, 231 Kan. 408, 646 P.2d 1049 (1982); *State v. James*, 217 Kan. 96, 535 P.2d 991 (1975); *State v. Sterling*, 15 Or.App. 425, 516 P.2d 87 (1973), *review denied*.

Our own Court of Appeals in *State v. Martinez*, 109 Idaho 61, 704 P.2d 965 (Ct. App.1985), *overruled on other grounds*, 111 Idaho 281, 723 P.2d 825 (1986), ruled that it was not error for the trial court to admit evidence of uncharged criminal conduct. In a case involving charges of rape, lewd conduct with a minor, aggravated battery and second degree kidnapping, the state sought to introduce testimony from a

teenage girl concerning an alleged assault on her by the defendant. The attack was similar in many respects to the assault which occurred to the victim of the charged crimes. The trial court allowed the evidence for the purpose of proving identity, common scheme and falsity of defendant's alibi. The Court of Appeals upheld the trial court's discretionary ruling.

We acknowledge that in some cases evidence of unrelated criminal conduct has been found to be irrelevant and inadmissible for the purpose of proving identity. These cases are readily distinguishable from the case before us because the facts in these cases did not sufficiently evidence a *modus operandi*. For example, in *State v. Hansen*, 187 Mont. 91, 608 P.2d 1083 (1980), the Montana Supreme Court overturned the trial court's ruling admitting evidence of a prior wrongful act. The court wrote:

> Numerous rapes follow the pattern of barroom pickup, voluntary entry into the offender's vehicle by the victim, driving to a remote area, advances, resistance and forcible intercourse. The sequence of events has no distinctive qualities that distinguish the acts from other rapes thus bringing the events within the purview of the similarity element of the crimes admission rule.

608 P.2d at 1086.

We conclude that the trial court did not abuse its discretion in concluding that the circumstances of Martin's two prior sex offenses were sufficiently similar to the circumstances of the sex offense charged to make them relevant to the issue of identity. While there may be certain common elements in many sexual assaults even though they involve different perpetrators, the very many similarities involved in this case are sufficient for us to conclude that the trial court did not abuse its discretion in concluding the evidence of those earlier

sexual acts was relevant as evidence of a *modus operandi* in order to prove Martin's identity as the sexual offender in this case. *State v. Abel*, 104 Idaho 865, 664 P.2d 772 (1983); *State v. Thomas*, 94 Idaho 430, 489 P.2d 1310 (1971).

### B. Probative value v. unfair prejudice

█ Having determined that the testimony from Martin's 1977 and 1979 victims was relevant, we now consider whether its probative value was substantially outweighed by any unfair prejudicial effect, as provided in I.R.E. 403. Based upon the many similarities in the three sexual assaults, the trial court made a specific finding that the testimony of the victims of the 1977 and 1979 sexual assaults "would be probative to the question of identity sufficient to outweigh the prejudice" to Martin. After reviewing the record, we conclude that it was not an abuse of discretion for the trial court to find that the relevance and probative value of the evidence outweighed the prejudice, even though he need not have held the State to that high a standard.[3] The trial court gave an appropriate limiting instruction advising the jury that the testimony be considered only as to identity, and not as to any other purpose. Accordingly, the trial court did not err in the exercise of its discretion.

### C. Remoteness

Martin argues for the first time on appeal that the testimony from Martin's 1977 and 1979 sex offense victims should not have been admitted because it was too remote in time from the 1987 sex offense charged. Martin argues that because of the remoteness the admission of the testimony was unfairly prejudicial to him. This argument was not raised at trial when the trial court was considering whether to admit the two prior victims' testimony.

---

**3.** The trial court's formulation of the I.R.E. 403 substantial prejudice rule required the State to show that the probative value outweighed the prejudice before the evidence would be admissible. The trial court found the probative value did outweigh the prejudice. However, that formulation placed too heavy a burden upon the State. I.R.E. 403 actually provides that the evi-

dence, although relevant, "*may* be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice...." (Emphasis added.) Under the rule, the evidence is only excluded if the probative value is *substantially* outweighed by the danger of unfair prejudice. The rule suggests a strong preference for admissibility of relevant evidence.

I.R.E. 103 states that an objection to the introduction of evidence must state "the specific ground of objection, if the specific ground [is] not apparent from the context. . . ." Where an objection to the admission of evidence has not been properly preserved by specifically arguing the grounds for the objection, error will not be considered on appeal. *State v. Kellogg,* 102 Idaho 628, 636 P.2d 750 (1981); *State v. Thomas,* 94 Idaho 430, 489 P.2d 1310 (1971). Here, Martin objected at trial to the 1977 and 1979 victims' testimony arguing only (1) that the testimony was not necessary and that identity was not at issue because the victim said she could identify Martin as her assailant, (2) that there were great dissimilarities between the three sex offenses, and (3) that the prejudice to Martin, if the testimony were allowed, would be too high. (See Tr., pp. 2–14.) No mention was made of remoteness as an issue at trial. We will not consider on appeal issues and arguments concerning the admission of evidence that are not raised at trial. These arguments must be addressed by the trial court which has the responsibility of weighing the objections and arguments presented by counsel and then determining whether evidence is admissible. *State v. Kellogg, supra.*

■ Were the remoteness issue properly preserved, it would not compel us to overrule the trial court's discretionary ruling in admitting Martin's 1977 and 1979 victims' testimony. The question of remoteness has arisen in several neighboring jurisdictions in cases concerning the use of prior wrongful acts to prove identity. Those courts consider the passage of time between the different criminal acts as one of the circumstances for a trial court to consider in determining whether there are sufficient similarities between the two acts to justify an inference that the same person committed both acts. Thus, if a rapist commits his crime in a unique way on one day, and shortly thereafter another rape is committed by a person fitting the same description in the same unique way, evidence of the identity of the perpetrator of the prior act would be extremely relevant to identify the perpetrator of the subsequent act. As the subsequent act becomes more remote from the initial act, the remoteness makes the similarities more attenuated. However, the remoteness generally goes to the weight of the evidence, not to its admissibility. *State v. Breazeale,* 238 Kan. 714, 714 P.2d 1356 (1986); *People v. Archerd,* 3 Cal.3d 615, 91 Cal.Rptr. 397, 477 P.2d 421 (1970). But the attenuation from remoteness is less significant where, as here, Martin spent all but approximately three months of the time in prison for prior sexual assaults. For example, in this case Martin was incarcerated on his first sexual assault in 1977, and he was released on probation in June of 1979. Within one month he committed the second sexual assault for which he was committed to prison until sometime in July of 1987. Within two months after his release from that imprisonment he committed the assault in question here. Under those circumstances the remoteness takes on a different perspective. As the Court in *State v. Breazeale,* 238 Kan. 714, 714 P.2d 1356 (1986), *cert. denied,* 479 U.S. 846, 107 S.Ct. 164, 93 L.Ed.2d 102 (1986), stated:

> The remoteness in time—ten years—is not significant in this case in light of the fact that the defendant spent the intervening time in prison. Although the prior crimes evidence *was* prejudicial to the defendant (as is all evidence against the accused in criminal actions), the trial court did not err in finding the probative value of the evidence outweighed its prejudicial effect.

714 P.2d at 1363.

We conclude that the fact that Martin's prior sex offenses occurred ten and twelve years before the charged sex offense does not make evidence of those prior wrongful acts irrelevant or unfairly prejudicial due to remoteness in time where, as here, Martin was incarcerated nearly the entire period. Within one or two months after being released he continued to employ the same *modus operandi* demonstrated in the earlier sex offenses. Given these unique circumstances, we conclude that the trial court did not abuse its discretion in admit-

ting the testimony of the 1977 and 1979 sex offense victims.

## III

### SENTENCE

■ The sentencing court ordered Martin to prison for thirty years, twenty years minimum, for attempted rape as enhanced by the repeat sex offender statute, I.C. § 19–2520C, and for five years, two years minimum, for second degree burglary to run concurrently. Martin asserts that the sentencing court abused its discretion by failing to consider any aspect of rehabilitation when imposing this sentence and that the sentence is excessive and unduly harsh. Because Martin's sentence was well within the statutory maximum, we will uphold it unless the sentencing court abused its discretion. *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982); *State v. Kysar*, 116 Idaho 992, 783 P.2d 859 (1989). A sentence may represent such an abuse if it is shown to be unreasonable upon the facts of the case. *Id.*

In view of Martin's criminal record and the grievous nature of the crimes committed, we conclude that the sentencing court did not abuse its discretion in sentencing Martin. Martin has a long history of sex offenses, including the attempted rape of his younger sister when he was a seventeen-year-old, prior felony convictions for rape, assault with intent to commit rape, assault with a deadly weapon, and first degree burglary. Almost immediately after each release from prison, Martin committed another offense, each more violent than the last. Here, Martin broke into a young woman's apartment, held a knife to her throat, threatened to kill her, attempted to rape her, tied her up, and beat her repeatedly. Fortunately for the young woman, a friend inadvertently came which resulted in her rescue, or her fate may have been altogether worse than it already had been. Having considered the record, we conclude that Martin's sentence is not excessive and that the sentencing court did not abuse its discretion.

We affirm the judgment of conviction and the sentence imposed.

BOYLE and McDEVITT, JJ., concur.

JOHNSON, Justice, dissenting.

I respectfully dissent from the opinion of the Court. The record convinces me that the remoteness issue was raised by Martin at trial. In arguing Martin's motion in limine, Martin's attorney said:

> And the only point I want to make is that the passage of time, I think, should have some bearing upon the identity of the perpetrator.... They're saying it shows the similarities, shows that he did it. And I think it's just as likely, even though there are similarities, the passage of time may show he's turned over a new leaf and is not involved in such things.

Transcript at 10.

I am unable to agree that Martin's incarceration for much of the time between the earlier offenses and the events in this case should make the evidence more admissible than if Martin had been in Australia, the North Pole or downtown Boise during that time. In my view, the circumstances of the prior offenses were too remote to be admitted.

BISTLINE, Justice, dissenting.

On considerable reflection, I find myself in agreement with the views expressed by Justice Johnson. In addition to that which he has written, a thought perhaps peculiar to me alone is that where the defendant had been convicted of the 1977 and 1979 offenses, the 1977 conviction being obtained on his confession, and duly punished therefore, it is seemingly further punishment for the two prior victims to be allowed to testify as to their experiences (forcible rapes), when Martin had been punished with prison sentences for those crimes. Moreover, my understanding is that the victim in this case encountered no trouble in knowing the identity of Martin, and told him so. With positive identification such as that, it would seem improper to let the two witnesses come into the courtroom solely in order to state their recollections of their bad experiences. If

this victim's identification of Martin was uncertain and dubious, then, that would be a different matter.

Martin may be a slow learner, but one would think that a ten year term, on top of the time he has previously served, might educate him to plan for a different future. The district court, however, is far more conversant with such matters.