44 P.3d 1122

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Lloyd CANNADY, Defendant–Appellant.**

**No. 24977.**

Supreme Court of Idaho,
Boise, December 2001 Term.

March 1, 2002.

Rehearing Denied April 25, 2002.

Wiebe and Fouser, Canyon County Public Defender; Thomas A. Sullivan, Deputy Public Defender, Nampa, for appellant. Thomas A. Sullivan argued.

Hon. Alan G. Lance, Attorney General; T. Paul Krueger, II, Deputy Attorney General, for respondent. T. Paul Krueger, II, argued.

EISMANN, Justice.

Lloyd Cannady appeals from his conviction for the offenses of lewd conduct with a child under the age of sixteen years and sexual abuse of a child under the age of sixteen years. He challenges the admission into evidence of a book found in his camper and the fixed life sentence imposed for the lewd conduct charge. We affirm his conviction and sentence.

## I. FACTS AND PROCEDURAL HISTORY

On February 7, 1994, a Canyon County grand jury indicted the defendant Lloyd Cannady for the crimes of lewd conduct with a child under sixteen years of age and sexual abuse of a child under sixteen years of age. The lewd conduct charge alleged that during the period from December 1, 1993, through January 24, 1994, Cannady touched a ten-year-old girl's genitals with his hand. The sexual abuse charge alleged that during the same time period Cannady touched the girl's breast with his hand and/or mouth. At the time of the alleged offenses, Cannady was 76 to 77 years of age. He pled not guilty to the

charges, and his jury trial was held on May 23 and 24, 1994.

During his trial, the State offered into evidence a paperback book entitled *The Child Abuse Industry,* which was found on January 27, 1994, during a search of Cannady's camper. Cannady objected to the book on the ground that it was irrelevant, immaterial, and had no probative value. The district court overruled that objection and admitted the book into evidence.

The jury found Cannady guilty of both counts, and on August 16, 1994, the district court sentenced him to the custody of the Idaho State Board of Correction for a fixed term of life, plus a fine, court costs, and restitution. The district court later sentenced Cannady to a concurrent term of fifteen years fixed on the sexual abuse charge.[1]

Cannady did not timely appeal his conviction and sentence. On March 6, 1997, however, he filed, *pro se,* a petition for post-conviction relief in which he alleged that his counsel at sentencing[2] was ineffective for failing to file a direct appeal as Cannady had timely requested him to do. At Cannady's request, the district court appointed counsel to represent him in the post-conviction proceedings. After an evidentiary hearing, the district court found that Cannady's sentencing counsel was ineffective for failing to timely appeal Cannady's sentence. It therefore entered an order reinstating Cannady's right to appeal in this case, but it limited that right to the issue of whether the fixed life sentence was excessive. Cannady timely appealed that order. On August 17, 1998, pursuant to its order in the post-conviction proceedings, the district court also vacated and reissued the judgment entered in this case. Cannady then timely appealed his sentence.

Both appeals were consolidated, and this Court ordered that the appeal would be decided on the briefs without oral argument and assigned it to the Court of Appeals. In his opening brief, Cannady raised two issues: (1) whether the district court abused its discretion by imposing a fixed life sentence, and (2) whether the district court erred in restricting the scope of his appeal in this case to the issue of whether the sentence was excessive. In its brief, the State conceded that the district court had erred in restricting the scope of Cannady's appeal. The Court of Appeals agreed, and on June 25, 1999, it reversed that order. It also then suspended this appeal to give Cannady an opportunity to file an amended notice of appeal. Finally, the Court of Appeals rescinded the order assigning this appeal to itself.

On August 6, 1999, Cannady filed an amended notice of appeal in which he stated that he was appealing both his sentence and the admission of evidence. This Court then retained the appeal.

## II. ANALYSIS

Cannady contends that the district court committed reversible error in admitting *The Child Abuse Industry* into evidence because that book was not relevant to any issues in this case. In its response to that issue, the State requests that we overrule *State v. Raudebaugh,* 124 Idaho 758, 864 P.2d 596 (1993), in which we held that because the relevancy of evidence is not a discretionary matter, we will review the question of relevancy *de novo* on appeal. The State argues that because the Idaho Rules of Evidence are to be interpreted consistently with the Federal Rules of Evidence and every federal circuit court of appeals reviews relevancy determinations by trial courts under an abuse of discretion standard, we should conform our standard of review to that of the federal appellate courts. The State also argues that a determination of relevancy does not lend itself to a narrow legal formula, but

---

1.  On May 19, 1999, the State moved to correct the sentence on the ground that Cannady was sentenced to a fixed life sentence on both charges and that the maximum sentence for sexual abuse was fifteen years. When sentencing Cannady, the district court imposed the fixed life sentence, but did not mention whether it was on both charges or only on the lewd conduct charge. Pursuant to the State's motion, Cannady was brought back into court on June 23, 1999, and the district court imposed a concurrent sentence of fifteen years fixed on the sexual abuse charge.

2.  Cannady was represented by one attorney during trial, by a second attorney during sentencing, and by a third attorney on this appeal.

must be decided on a case-by-case basis, which is best done by the trial court.

The State has not convinced us that we should overrule *Raudebaugh.* Although this Court adopted the Idaho Rules of Evidence in order to obtain uniformity in the trial practice in both the state and federal courts, *Chacon v. Sperry Corp.,* 111 Idaho 270, 723 P.2d 814 (1986), the standard that we apply when reviewing relevancy rulings made by the trial court will not affect the interpretation of any of the rules of evidence. Although relevancy certainly must be decided on a case-by-case basis, the State has not shown why that determination cannot be made on appeal in the same manner as in the trial court. On appeal, the parties can certainly make any arguments regarding relevancy that they could have made in the trial court. If evidence is not relevant, then it should not be admitted. If irrelevant evidence is admitted, then the focus on appeal should be whether or not such error prejudiced the objecting party. Therefore, we decline the State's invitation to overrule *Raudebaugh.*

■ The book *The Child Abuse Industry* is an extensive criticism of what the author calls the "child abuse industry"—the bureaucratic and legal system established to define, investigate, and prosecute allegations of child abuse. In large print on the back cover is the statement, "Last year, over one million North American families were falsely accused of child abuse." The book includes accounts of innocent persons who were wrongly accused of abusing children, whether by neglect, physical abuse, or sexual abuse. On almost every page, various portions of the text had been underlined in either red or blue ink, or both. Many portions of text were further highlighted by additional markings, such as brackets, stars, or notations written in the margins. The highlighted text includes warnings that child sexual abuse is loosely defined; that by including fondling as part of sexual abuse, innocent activities can be prosecuted as child sexual abuse; that children can be easily led to falsely accuse people of sexual abuse; and that every state but Nebraska permits a conviction on the uncorroborated testimony of a child, which

should not be sufficient evidence. According to the author, "In real life, sexual abuse and physical abuse leave evidence." This statement had been underlined in blue ink. The author's suggested reforms include changing the definition of child sexual abuse so that "[s]exual abuse is no longer assumed; it must be proven that the contact was sexual." This statement had been highlighted by heavy underlining and by stars drawn in both margins.

The inside front cover of the book had been stamped, "THIS BOOK IS THE PERSONAL PROPERTY OF" followed by the signature "Lloyd J. Cannady." Inside the back cover was printed, "Property of Lloyd John Cannady." Cannady's name was also written in several other places in the book. The district court could reasonably infer that Cannady had read the book and that it was he who made the numerous markings throughout it.

Rule 401 of the Idaho Rules of Evidence defines relevant evidence as any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *State v. Winn,* 121 Idaho 850, 828 P.2d 879 (1992). One of the facts of consequence in this case was Cannady's intent. In order to convict Cannady of the lewd conduct charge, the State had to prove that Cannady touched the girl's vaginal area with his hand and that he did so "with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of [Cannady or] such minor child." IDAHO CODE § 18–1508 (1997). In order to convict Cannady of the sexual abuse charge, the state had to prove that Cannady touched the girl's breast with his hand and/or mouth and that he did so "with the intent to gratify the lust, passions, or sexual desire of [Cannady or the] minor child." IDAHO CODE § 18–1506 (1997). On both charges, the State was required to prove that Cannady's touching of the girl was sexual, rather than accidental or innocent.

In this case, all of the alleged sexual abuse involved fondling or kissing. The young girl testified that there were several instances

when she and Cannady were in the living room of her mother's home and he touched her breast over her clothing. He did so either with his hand or by kissing her breast. She also stated that once while they were in Cannady's pickup, he touched her breast under her clothing and said that her breasts were growing. The young girl testified that Cannady rubbed her vagina, over her clothing, three times. She said that two of those incidents occurred in the living room of her mother's home and one occurred in the girl's bedroom when she and her female cousin were in bed. The prosecuting attorney asked whether one of the incidents of vaginal touching in the living room could have been accidental, and the young girl stated that she did not know.

The book was relevant to Cannady's intent. The State had to convince the jury beyond a reasonable doubt that Cannady's touching of the young girl was sexual, not accidental or innocent. That burden can be difficult in cases involving physical touching over the child's clothing. The extensive underlining of large portions of the text indicates that Cannady was very aware of false allegations of child sexual abuse. The jury could infer that someone who appeared so concerned about false allegations would not, if his motives were innocent, touch a young girl in any manner that could be construed as being sexually motivated. He certainly would not touch or kiss her breasts or rub her vaginal area. From various portions of the text that had been underlined, a reader could conclude that it is difficult to prosecute sexual fondling of children because it leaves no corroborating evidence and can be defended by arguing that any touching that may have occurred was not intended to be sexual.[3] The jury could reasonably infer that Cannady had learned from the underlined portions of the text that it was difficult to successfully prosecute those who fondle young children and that, rather than being innocent or acciden-

tal, his conduct with the young girl was designed to limit his sexual contact with her to that which would be most difficult to prosecute because of the lack of corroborating evidence.

On appeal, Cannady also argues that the book should have been excluded from evidence because several notations in the book indicate that Cannady had been previously investigated for, charged with, or convicted of child sexual abuse. In 1984 Cannady pled guilty in Oregon to second degree rape of a four-year-old girl, for which he was sentenced to the penitentiary. On the last page of the book is a hand-written notation directing the reader's attention to four pages including page 94. At the bottom of page 94 and the top of page 95 is the following text:

> Confirmation of this comes from a surprising quarter: from *men falsely accused of sexual abuse.* As a Utah State Legislature subcommittee was told in summer 1985, *"because of the way the laws are being enforced . . . men who plead guilty usually don't go to jail while a man . . . who maintains his innocence faces huge legal costs and a possible jail sentence if he cannot prove his innocence."*
>
> As one man put it,
>
> *"I was promised that if I pled guilty I would get no jail time.*
>
> *"I spoke with Families United (a non-profit counseling service that deals with child sexual abusers) and was told that if I pleaded guilty I would be seeing my children now."*

The above-quoted text was highlighted with red underlining (the single underline above), with both red and blue underlining (the double underline above), with brackets drawn in red on both sides of the text, and with stars drawn in red in both margins. Written in red in the left margin, with arrows pointing to the text that had been underlined in both

---

3. In this case, the cross-examination of the young girl was designed to indicate that the touching was not sexual. Cannady's counsel elicited from the girl that Cannady had told her he wanted to protect her from bad sex touching; that he told her several times not to let anyone touch her vaginal area in a bad way; that Cannady never did anything to her that she did not like and told

him "No;" that he never hurt or threatened her; that she did not know if his touching of her vaginal area could have been accidental; and that she did not know if he may have been grabbing or squeezing her leg at the time such touching occurred. The defense's closing argument stressed that any touching that occurred was accidental and not sexual in nature.

red and blue, was the notation, "This is my story too." On page 95, a portion of text that had been underlined in both red and blue stated, "Plea bargaining is designed to punish the innocent and reward the guilty." Written in red in the margin, with arrows pointing to that portion of text, was the notation, "I can verify this." An underlined portion of text on another page advised, "Buy a portable cassette recorder and a good supply of cassettes and batteries. You will need it if you are ever investigated." Written in the margin next to that text was the notation, "They would not let me use it." Because the police seized the book before Cannady was charged in this case, these notations obviously referred to a prior incident in which he was investigated, charged, and pled guilty.

The notations indicating that Cannady had been previously investigated, charged, and convicted of child sexual abuse would be evidence of another crime and would generally not be admissible except as provided in Rule 404(b) of the Idaho Rules of Evidence. *State v. Tolman,* 121 Idaho 899, 828 P.2d 1304 (1992); *State v. Martin,* 118 Idaho 334, 796 P.2d 1007 (1990). Before offering such evidence in a criminal case, the State must file and serve notice reasonably in advance of trial, or during trial if there is good cause for not giving pretrial notice, of the general nature of any such evidence it intends to introduce at trial. I.R.E. 404(b). In this case, the State did not do so with respect to the notations in the book. It was inexcusable for the prosecuting attorney to offer the book into evidence without complying with Rule 404(b) and drawing the court's and the defense counsel's attention to the notations indicating that Cannady had been previously investigated, charged, and convicted of child sexual abuse. Although the prosecuting attorney stated in her closing argument that she had not read the book and did not know anything about it, she should not have offered it into evidence unless she had examined its contents. The issue, however, is whether this alleged error was preserved for review on appeal.

An objection to the admission of evidence must state the specific ground for the objection, if it is not apparent from the context. *State v. Martin,* 118 Idaho 334, 796 P.2d 1007 (1990); I.R.E. 103(a)(1). Cannady objected to the book in general as being irrelevant, but he did not specifically object to or even mention the notations at issue, nor did he argue that the book, or anything in it, constituted evidence of other crimes or wrongs. Because he did not base his objection upon Rule 404(b) of the Idaho Rules of Evidence, and such objection was not apparent from the context, Cannady has not preserved that issue for appeal. *State v. Lewis,* 123 Idaho 336, 848 P.2d 394 (1993); *State v. Higgins,* 122 Idaho 590, 836 P.2d 536 (1992).

The final issue with respect to the book is whether its admission into evidence constitutes fundamental error which can be reviewed on appeal even though no proper objection was made below. The admission in a criminal case of evidence of a defendant's prior crimes under Rule 404(b) of the Idaho Rules of Evidence is a two-tiered analysis. First, the evidence must be admissible for some purpose other than to prove the defendant's character or to show he acted in conformity therewith. I.R.E. 404(b). Subsection (b) includes a nonexhaustive list of purposes for which such evidence can be admitted, if it is relevant to a disputed issue of fact other than the defendant's propensity to commit the crime charged. *State v. Tolman,* 121 Idaho 899, 828 P.2d 1304 (1992); *State v. Moore,* 120 Idaho 743, 819 P.2d 1143 (1991). Second, if the evidence is admissible under Rule 404(b), it must still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. *State v. Moore,* 120 Idaho 743, 819 P.2d 1143 (1991); I.R.E. 403. This latter determination is within the discretion of the trial judge. *State v. Martin,* 118 Idaho 334, 796 P.2d 1007 (1990). Even if we were to conclude that the district court had abused its discretion under Rule 403 in admitting the book into evidence with the notations indicating Cannady had been previously investigated, charged, and convicted of child sexual abuse, it would not constitute fundamental error. An abuse of discretion in admitting evidence is a trial error and does not go to the foundation of the case or take from the defendant a right which was essential to his

defense. *State v. McAway,* 127 Idaho 54, 896 P.2d 962 (1995); *State v. Johnson,* 126 Idaho 892, 894 P.2d 125 (1995); *State v. Bingham,* 116 Idaho 415, 776 P.2d 424 (1989). We express no opinion upon whether admitting the book with the notations would have been an abuse of discretion. We merely reject the invitation to address the issue because there was no objection and its admission did not constitute fundamental error.

Finally, Cannady appeals his sentence for the lewd conduct charge of life in the custody of the Idaho Board of Correction without the possibility of parole. He does not challenge his sentence of fifteen years without parole for the sexual abuse charge, even though at his age it is unlikely he will outlive that sentence.

We review the length of a sentence under an abuse of discretion standard. *State v. Trevino,* 132 Idaho 888, 980 P.2d 552 (1999). When a sentence is challenged as being excessively harsh, we independently review the record on appeal, having due regard for the nature of the offense, the character of the offender, and the protection of the public interest. *Id.* In order to show that the sentence imposed was unreasonable, the defendant must show that the sentence, in light of the governing criteria, is excessive under any reasonable view of the facts. *Id.* When reviewing a fixed life sentence, the primary factors considered are the gravity of the offense and/or the need to protect society from the defendant. *State v. Charboneau,* 124 Idaho 497, 861 P.2d 67 (1993); *State v. Enno,* 119 Idaho 392, 807 P.2d 610 (1991). In this case, the district court based its sentence upon the need to protect society. Therefore, we will review the facts relevant to that issue.

Cannady was born and raised in Oklahoma. His first reported sexual experience was at age 8 when he performed anal intercourse upon another boy because, according to Cannady, the boy begged him to do it. At age 9 Cannady had sex with a calf, and at age 15 he had sex with a mare. Cannady married in 1936, when he was 19½ years of age and his wife was 15½ years of age. Between 1939 and 1963 he had continuous sexual experiences with cattle and horses, and once with a hog. He stated that sex with animals was a means of releasing his sexual frustrations because his wife would not engage in sex with him and that it gave him the same amount of pleasure as sex with a woman.

While he was living in Oklahoma, Cannady was accused of sexually abusing two young girls. One he fondled when she was ten years old because, according to Cannady, he wanted to satisfy her curiosity. The other he began sexually abusing when she was six years of age, and he began having sexual intercourse with her when she was fourteen. According to Cannady, this was a form of therapy to make the girl feel important. In 1973, when she was 19 years of age, the girl disclosed the abuse, and the state of Oklahoma brought criminal charges against Cannady. Those charges were resolved with Cannady being committed to a mental hospital for a period of two weeks. The court records indicate that he was committed because he was violent, threatened to kill members of his family, and constituted a danger to himself and others. Upon his release, Cannady left his wife and moved to Parma, Idaho, and then in 1974 to Nyssa, Oregon.

In December 1984 police in Nyssa, Oregon, began investigating allegations that Cannady had been sexually abusing a 4–year–old girl. A physical examination of the girl showed that she had been penetrated anally and vaginally. When the police interviewed Cannady, he admitted penetrating her with his finger and rubbing her vagina with his penis. When asked whether his penis was ever placed in the girl's anus, Cannady stated that it was possible that he had mistaken it for her vagina. He also had the girl masturbate him. He stated that he had sexual contact with her four to five times while trying to demonstrate to her the difference between right and wrong. According to Cannady, the girl was sexually aggressive and asked him to have sex with her, so he cooperated in a limited way to teach her right from wrong.

During that interview, Cannady also disclosed that he had sexually molested a 6 year old girl earlier that summer. According to

Cannady, that girl also wanted to do a lot of sexual things, and he acceded to her requests in order to satisfy her curiosity and to teach her right from wrong. He stated that they were in love with each other and that their love was tender. Cannady's son later reported that he had walked into his father's residence during the summer and encountered Cannady naked with the girl, who was also naked, atop his shoulders. When he asked what was going on, Cannady stated that they had just become married. Cannady's molestation of that girl ended when her family moved from the area.

Prior to sentencing in the Oregon case, Cannady was given a psychological evaluation to assess his sexual dangerousness and suitability for treatment. The seven-day evaluation consisted of a physical examination, clinical interviews by a psychiatrist and a psychologist, psychological testing to appraise intellectual and personality functioning, a Penile Plethysmographic Assessment to gauge both appropriate and deviant sexual arousal patterns, and a review of court and investigatory records. The evaluation team conducting the assessment concluded, "Mr. Cannady clearly meets the statutory definition for a sexually dangerous person in that the probability of future offenses is seen as being very high. Thus, incarceration is recommended for the protection of society." The evaluation team did not believe that Cannady was a suitable candidate for treatment because his distorted and deviant personal psychology was entrenched; because he did not perceive himself as having any sexual problems and expressed no motivation to participate actively in treatment; and because he had no remorse for his victims and did not accept responsibility for his conduct.

Cannady was charged with four felonies in the Oregon case: first degree sexual abuse, first degree rape, first degree sodomy, and second degree rape. In exchange for his plea of guilty to the latter charge, the other three charges were dismissed. He told the presentence investigator that he had been having sexual experiences with children from the 1950's to the time of his arrest, and the investigator noticed Cannady fondle his genitals when discussing the two young girls in

Nyssa. Cannady was sentenced to prison, and he was paroled on November 4, 1991. Some time later, he moved to Caldwell, Idaho.

In January 1995, Cannady was again suspected of sexually molesting another young girl. The investigation began because of a letter that Cannady wrote on January 10, 1994, to his son in which Cannady described how much time he was spending with the 10 year old victim in this case. After describing various activities such as taking her swimming, to dine out, and for drives, Cannady wrote, "Don't worry my Son. We are not having sex." Cannady concluded writing about the young girl as follows, "I am glad you have a friend, so when you are in you aren't lonely. Now I am not as lonely + sad as usual. I hope it lasts a long time." Because of these statements in the letter, Cannady's son contacted the police. Although Cannady's molestation of the young girl in this case was limited to fondling and kissing, she testified that he had asked her several times to have sex with him.

Cannady stated during his sentencing hearing that after he retired in 1981, he did a lot of free babysitting for people. Considering the harm caused to the victims of child sexual abuse, Cannady's long history of sexual deviancy, and his low likelihood of rehabilitation, the district court did not abuse its discretion in concluding that a fixed life sentence was warranted in order to protect young children.

### III. CONCLUSION

The district court did not err in admitting the book entitled *The Child Abuse Industry* into evidence over the objection that it was irrelevant. Because no objection was made based upon Rule 404(b) of the Idaho Rules of Evidence, we do not address the issue of whether it was an abuse of discretion to admit the book without deleting handwritten notations indicating that Cannady had been previously investigated, charged, and convicted of child sexual abuse. The district court did not abuse its discretion in sentencing Cannady to life in the custody of the Idaho Board of Correction without the possibility of parole.

Chief Justice TROUT, and Justices SCHROEDER, WALTERS and KIDWELL concur.