53 P.3d 347

Salvador LOZA, Plaintiff–Appellant,

v.

ARROYO DAIRY, Defendant–
Respondent.

No. 27010.

Court of Appeals of Idaho.

Aug. 9, 2002.

DeHaan Associates, Twin Falls, for appellant. Harry C. DeHaan argued.

Merrill Merrill, Pocatello, for respondent. David C. Nye argued.

GUTIERREZ, Judge.

We affirm the district court's grant of Arroyo Dairy's motion *in limine* precluding the admission of the dairy owners' statements concerning liability insurance. We conclude that the evidence has not been shown to be relevant, and the district court correctly held that any marginal relevance was outweighed by the risk of unfair prejudice.

## I.

## FACTUAL AND PROCEDURAL SUMMARY

This case concerns an injury sustained by Salvador Loza, while employed at Arroyo Dairy. The dairy is owned and operated by Sergio and Sophia Arroyo.

Around September 17, 1996, about two weeks after Loza started working at the dairy, Sophia unsuccessfully tried to put a

bar-type kicker on a newly purchased heifer. She was afraid to milk the young cow and Loza offered to milk it for her. When Loza attempted to install the kicker, the animal jumped, mangling Loza's right arm. Loza required extensive medical treatment of the injured arm.

According to Loza and several witnesses, the topic of a big check being issued to Loza by the dairy's insurance was mentioned on numerous occasions by Sergio and Sophia.[1] Some time after the injury, Loza handed Sergio a physician's note stating that he could not work due to his injuries. Sergio then prepared a form, told Loza to sign it, and told him that "in a couple of days, he was going to receive a big check."

After the funds failed to arrive, Loza questioned Sergio, who assured him he was going to get a big check. After more time passed without the arrival of the promised funds, Sergio told Loza that the "main leader of the insurance" was going to come and talk to Loza, take a recorded statement and have Loza tell him what it was he wanted.

Although Loza was unable to work due to his injuries, he continued to live at the dairy for several months after the accident. Loza's friends and relatives would stop by to see and care for him. During these visits and later, Sergio and Sophia allegedly made additional statements about insurance to Loza and to other visitors.

Antonio Gutierrez, who lived with Loza at the dairy, testified that about two weeks after the accident while he, his wife, Laura, and his brother, Roberto, were present, Sergio told Loza not to worry because he was going to receive a big check. Antonio also testified that Sergio indicated that the check was going to come from the insurance. Antonio stated that Sergio made these and similar statements to Loza in Antonio's presence on several occasions during two to six weeks following the accident.

Laura Gutierrez testified that she met Sophia and Sergio at the dairy about two to

---

1. The district court's decision refers only to Sergio's alleged statements about insurance. However, the record below also includes alleged

statements made by Sophia. The Court's analysis herein applies to the statements of both.

three weeks after Loza's accident. Laura averred that on that occasion and in the presence of several others, Sophia told her that Loza need not worry about the money because he was going to get a big check. Laura stated that both Sergio and Sophia repeated similar statements on two or three other occasions also indicating that the money would come from the insurance company.

Loza's niece, Guadalupe Loza, testified that she was present when Sergio told Loza, "[D]on't worry, you are going to get paid by the insurance." Guadalupe also swore that, some ten to fifteen days after the accident while the insurance "inspector" was taking Loza's statement about the accident, Sergio told her, "[T]he insurance would pay good money for that" or "I pay money, a lot for insurance .... [M]y insurance is very good insurance .... [T]hey will pay good check for him." Guadalupe testified that Sergio repeated similar statements several other times in her presence.

The dairy's insurance carrier made payments totaling $15,000 to medical providers for Loza's care, which included the installation of a metal plate in his arm. The carrier then stopped paying for these services, and Loza's physicians and other providers refused to set further appointments for him.

Loza filed a complaint against the dairy alleging negligence. The dairy filed a motion *in limine* to exclude any mention of liability insurance by any attorney, party, or witness, arguing that the Arroyos' statements were inadmissible under Idaho Rule of Evidence 411 because they included insurance references. The dairy also argued that the statements were inadmissible under Rule 409, which bars evidence regarding the payment of medical expenses as proof of liability.

The district court granted the motion *in limine* under Rule 411, finding that Sergio was only giving his opinion on insurance coverage, and under Rule 403, finding that the prejudicial effect of the statements outweighed their probative value. The district court rejected the notion that the statements were admissions of liability or negligence and found little probative value in the statements, that value going only to Sergio's promises to pay for Loza's medical expenses. Loza ap-

peals the granting of the motion *in limine*. The parties stipulated to the entry of a judgment favoring Arroyo Dairy to allow the instant appeal. They agreed that the judgment would be vacated and the case taken to trial if the *in limine* ruling is reversed on appeal. Thus, the district court's motion *in limine* ruling arrives before us rather like an interlocutory appeal.

## II.

## ANALYSIS

■ On appeal, Loza argues that the district court erred by not allowing the statements of insurance to be introduced at trial as evidence that Sergio believed he was negligent. Loza contends that the statements that Loza would receive a "big check" from Arroyo's insurance company were admissible because they constitute implied admissions of liability, and as such, are not barred by Rule 411.

■ We review a motion *in limine* ruling under an abuse of discretion standard. *Leavitt v. Swain*, 133 Idaho 624, 631, 991 P.2d 349, 356 (1999). Under this standard, we conduct the three-pronged *Sun Valley* inquiry to determine whether the district court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion and consistently with applicable legal standards applicable to the specific choices before it; and (3) reached its decision by an exercise of reason. *Id.; Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). We do not overturn the district court's exercise of that broad discretion, absent clear abuse. *See Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 900, 665 P.2d 661, 664 (1983). However, evidentiary rulings involving relevancy are not discretionary matters, and as such, are reviewed *de novo* on appeal. *State v. Cannady*, 137 Idaho 67, 69–70, 44 P.3d 1122, 1124–25 (2002).

■ The general rule in Idaho is that evidence of insurance is inadmissible at trial to prove negligence. *Brown v. Jerry's Welding & Constr. Co.*, 104 Idaho 893, 896, 665 P.2d 657, 660 (1983). Idaho Rule of Evi-

dence 411 specifically prohibits the admission of evidence as to insurance coverage when proffered on the issue of whether a person acted negligently or otherwise wrongfully. Rule 411, however, is not an absolute bar to the admission of liability insurance evidence. Rather, liability insurance evidence may be admitted when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness. *Id.* Thus, Idaho allows evidence of insurance to be admitted at trial where relevant to issues other than to prove negligence. *Id.* at 896, 665 P.2d at 660. According to 23 WRIGHT & GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 5364 at 447 (1980), addressing the identical federal rule of evidence, Rule 411 works to exclude evidence of liability insurance only when the relevance of the evidence is premised on the hypothesis that the existence of insurance motivated the person to behave carelessly. In any circumstance in which the claimed relevance does not rest upon such a hypothesis, Rule 411 does not apply. *Id.* Here, Loza was not offering this evidence to show that the Arroyos were motivated to behave carelessly because they had insurance coverage. Rather, Loza sought to use the evidence as Sergio's admissions that he was at fault and hence bore liability that would be covered by his liability insurance carrier.

The above-referenced treatise discusses the matter of such "intertwined admissions," in which there is an admission of liability embedded within a mention of insurance. On this point, the authors state:

It can be argued that where a statement concerning insurance is offered as an admission of liability, it should be excluded because it is being offered on "the issue of whether he acted negligently or wrongfully." But this argument ignores the fact that the insurance evidence is not being offered to support an inference that it caused the insured to behave in a negligent manner; rather, it is being offered to prove that he believed that he had been negligent. The former inference is the "absurd hypothesis" that was the basis of the common law rule; the latter inference may or may not be "tenuous," depending on the facts of the particular case.... [T]he better interpretation of Rule 411 is

that it is not an absolute bar to the use of insurance statements as admissions of liability; rather the admissibility of such statements is determined by general principles of relevance.

*Id.* § 5368 at 469.

Idaho adheres to this interpretation. In *Lopez v. Allen,* 96 Idaho 866, 538 P.2d 1170 (1975), the trial court struck the farmer employer's statement "that he was sorry about what happened and not to worry, that his insurance was supposed to take care of the bill." *Id.* at 871–72, 538 P.2d at 1175–76. The Idaho Supreme Court held that excluding the statement was not an abuse of discretion explaining:

In most circumstances, references to liability insurance are not admissible as the reference would not be relevant to the issues of the case. McCormick, Evidence (2d ed.) § 201 (1972). However, this is not an ironclad rule and there are certain exceptions. If the admission of a party bearing on negligence or damages includes a reference to the fact of insurance coverage which cannot be severed without substantially lessening the evidential value of the admission, then the reference to insurance would be admissible in the context of the admission. McCormick, supra, p. 480. The answer given sheds no light upon the issue of negligence other than the implications which could be drawn from his statement that his insurance would probably pay the hospital bill. The possible prejudicial impact of informing the jury that Allen had insurance coverage far exceeded any probative value of the statement.

*Id.*

Thus, the evidence proffered by Loza was not rendered inadmissible by Rule 411. It may be, however, inadmissible under a Rule 402 relevance assessment or a Rule 403 balancing test. As the district court recognized, Sergio's statements would constitute an admission of liability only if he understood that the liability insurance company's obligation to pay benefits depended upon there being some negligence of Arroyo Dairy that was a proximate cause of Loza's injury. Here, there was no foundation showing that Sergio

possessed any such understanding when he made the alleged statements. To the contrary, Loza and his witnesses acknowledged that Sergio consistently denied fault. With the foundational context that is in the record, Sergio's statements about the anticipated big check would not support an inference that Sergio believed himself liable. The testimony in question is inadmissible because it is irrelevant; it simply has not been shown to constitute an admission of liability as claimed by Loza.

Moreover, even if the statements bore some marginal probative value as implicit admissions of liability, the district court acted well within its discretion in holding that such probative value was substantially outweighed by the risk of unfair prejudice, making the evidence inadmissible under Rule 403. We conclude that the district court did not err in granting the motion *in limine*.

### III.

### ATTORNEY FEES

Arroyo Dairy claims attorney fees on appeal on the basis that the appeal was frivolous. *See* I.C. § 12–121; I.R.C.P. 54(e)(1); *Minich v. Gem State Developers,* *Inc.,* 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). Arroyo argues that Idaho law regarding Rules 411 and 403 is well settled and further that Loza made no substantial showing that the trial court misapplied the law. We disagree and point to the valid questions posed by "intertwined admissions" cases under Rule 411. While Loza was unsuccessful, his appeal was not frivolous. Arroyo Dairy's request for attorney fees is therefore denied.

### IV.

### CONCLUSION

Accordingly, the order of the district court granting Arroyo Dairy's motion *in limine* is affirmed. Costs, but not attorney fees on appeal are granted to Arroyo Dairy.

Chief Judge PERRY and Judge LANSING concur.