# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 45657

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: March 15, 2019 |
| Plaintiff-Respondent, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| JOSEPH J. HILLENBRAND, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Christopher S. Nye, District Judge.

Judgment of conviction, <u>affirmed in part</u> and <u>vacated in part</u>; and <u>case remanded</u>.

Eric D. Fredericksen, State Appellate Public Defender; Maya P. Waldron, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Joseph J. Hillenbrand appeals from the district court's judgment of conviction. He argues the district court: (1) abused its discretion by allowing a portion of an officer's testimony that lacked foundation and relevance; (2) abused its discretion by allowing an officer to testify that the State did not disclose as a witness before trial; (3) committed reversible error by denying Hillenbrand's motion for a mistrial after an officer testified that Hillenbrand faced a felony charge; and (4) abused its discretion by ordering fifty additional hours of community service beyond the statutory minimum without substantial and competent evidence. The judgment of conviction is affirmed in part and vacated in part.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Testimony at trial was as follows. After observing a vehicle with its taillight out, Officer Childers stopped the vehicle. Officer Childers asked the driver, Hillenbrand, and the front seat passenger for their identification. Hillenbrand handed his driver's license to Officer Childers, but had trouble locating his registration and proof of insurance as he looked through a pile of papers in the vehicle. Officer Childers noticed Hillenbrand began to get nervous. As Officer Childers asked Hillenbrand where he had come from and where he was going, Hillenbrand became more anxious and nervous. After Officer Childers asked Hillenbrand if he had any drugs in the car, Hillenbrand became extremely nervous. Officer Childers told Hillenbrand he would be walking his drug dog around the vehicle. He gave Hillenbrand more time to look through his paperwork as he walked back to his patrol vehicle.

Officer Schouman arrived at the scene and spoke with Officer Childers as Officer Childers walked back to his patrol vehicle. Officer Childers asked Officer Schouman to run Hillenbrand and the passenger's identification cards. Around this time, Officer Otto arrived at the scene and stood by the passenger side of Hillenbrand's vehicle. Officer Childers then ran his drug dog around the vehicle. The dog alerted on the driver's door.

Officer Childers returned the drug dog to his patrol vehicle and came back to the driver's side of Hillenbrand's vehicle together with Officer Schouman. Officer Childers told Hillenbrand his drug dog had alerted on the vehicle and asked Hillenbrand to step out. Hillenbrand became very frantic and immediately started digging underneath his seat. Officer Childers opened the driver's door, grabbed Hillenbrand, and told him to step out of the vehicle. The passenger, in response to a command from Officer Otto, calmly put and kept his hands on the dashboard while Hillenbrand kept digging. After more prompting, Hillenbrand got out of the vehicle. Officer Otto also had the passenger get out of the vehicle. During this time, Officer Coronado arrived on the scene.

Officer Schouman searched the vehicle. He retrieved a clear plastic baggie containing a white crystal substance from under the driver's seat, which Officer Childers suspected to be methamphetamine. The substance was initially tested by Officer Coronado and a lab test later identified the substance as methamphetamine. Hillenbrand was arrested and taken into custody.

2

Hillenbrand testified he was not aware of the methamphetamine found underneath his seat and that it was not his. He also testified that he appeared nervous during the encounter because he has a severe anxiety disorder.

The State charged Hillenbrand with felony possession of methamphetamine. Roughly five months before trial, the State made three separate disclosures regarding witnesses it would call. The first two disclosures listed Officers Childers, Schouman, and Coronado, as well as "ANY OTHER WITNESS LISTED IN THE REPORTS." The third disclosure was the same as the first two including the phrase "ANY OTHER WITNESS LISTED IN THE REPORTS," but added an employee of the Idaho State Forensics Lab as a State's witness. Five days before trial, the State filed a witness and exhibit list, indicating which officers it intended to call as witnesses at trial, which listed the four witnesses from the third disclosure, but did not list Officer Otto or include the language that the State would call "ANY OTHER WITNESS LISTED IN THE REPORTS." The day after the trial began, the State filed another discovery response that listed the same four State witnesses but did not include Officer Otto. It also included, as did the prior discovery responses, the phrase "ANY OTHER WITNESS LISTED IN THE REPORTS" under the "State Witnesses" section. At trial, the State called the four witnesses it had disclosed in the witness list: Officers Childers, Schouman, and Coronado and the Idaho State Forensics Lab employee. In addition, the State also called Officer Otto, who had not been disclosed on the State's witness list.

During the cross-examination of Officer Childers, Hillenbrand's attorney began a line of questioning about Hillenbrand's nervousness and how nervous typical individuals act during an investigation. During the questioning, Hillenbrand's attorney asked, "Would you agree that an individual can become typically nervous when suddenly asked about something like drugs for example?" Officer Childers responded, "The majority of people that I speak with, I would--if I were to give you a number if that's what you're wanting, 80 percent do not get that nervous about it." Hillenbrand's attorney did not object to or move to strike the response but continued questioning the officer about the stop. Hillenbrand's attorney then asked, "But you would agree that suddenly being asked about drugs is certainly something that you've encountered people becoming nervous on?" Officer Childers replied, "Some people have, yes."

On re-direct examination, the State returned to the topic of nervousness:

3

STATE: And one of the questions the defense attorney asked you was what percentage of people become nervous when you ask them about drugs.

DEFENSE: Objection. Misstates the question.

COURT: I'll allow it. Go ahead and answer.

CHILDERS: Most people become somewhat nervous about it but they don't get a heightened nervous about it. I'll ask 90 percent of the people that I conduct a traffic stop with depending on their answers of where they're coming and going from.

STATE: Could you expand on that just a little bit? So what percentage becomes extra nervous when you ask them about drugs?

DEFENSE: Objection. Foundation. Relevance.

STATE: She opened the door, Your Honor.

DEFENSE: I never asked a question about percentage.

COURT: I'll go ahead and allow the question. It's overruled.

CHILDERS: Maybe 10 percent of the people get that nervous about it.

STATE: And of that 10 percent of people based on your training and experience as a field officer, how much do you find drugs?

CHILDERS: Of the percentage, almost all of them.

Hillenbrand did not object to Officer Childers' final answer, and the State proceeded to another line of questioning.

The State later called Officer Otto to testify and Hillenbrand objected: "This is a witness that is disclosed in discovery but it wasn't disclosed in the State's witness list that they submitted so we'd object to him testifying." The district court overruled Hillenbrand's objection without further comment. During Officer Otto's testimony, he stated that Hillenbrand was "arrested for possession of controlled substance, felony." After Officer Otto was excused, Hillenbrand moved for a mistrial outside the presence of the jury, arguing that "punishment is not something that the jury should be taking into consideration." The district court denied the motion and offered to provide a curative instruction to the jury, but Hillenbrand's attorney declined the offer, fearing it would further draw the jury's attention to Hillenbrand's punishment.

The jury found Hillenbrand guilty of possession of methamphetamine. At Hillenbrand's sentencing hearing, the State asked the district court to impose fifty additional hours of community service beyond the statutory minimum of one hundred because, according to the State, after trial Hillenbrand passed one of the jurors in the parking lot and Hillenbrand muttered some expletives at the juror. The juror came back and was upset enough to tell the bailiff. Hillenbrand's attorney said it was the first she had heard of the incident, Hillenbrand denied making the comment, and it would be "unfair to order additional punishment of Mr. Hillenbrand

4

for something that we have little evidence of." The district court imposed a unified three-year sentence, with one year fixed; suspended the sentence and placed Hillenbrand on probation; and ordered 150 hours of community service. Hillenbrand appeals to this Court.

## II.

## STANDARD OF REVIEW

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion, acted consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Appellate court review is limited to the evidence, theories, and arguments that were presented below. *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017). For an evidentiary objection to be preserved for appellate review, either the specific ground for the objection must be clearly stated, or the basis of the objection must be apparent from the context. *Hansen v. Roberts*, 154 Idaho 469, 473, 299 P.3d 781, 785 (2013).

Error is not reversible unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* Thus, we examine whether the alleged error complained of in the present case was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005). Where a defendant meets his or her initial burden of showing that a constitutional violation has occurred, the State has the burden of demonstrating to the appellate court beyond a reasonable doubt that the violation did not contribute to the jury's verdict. *State v. Perry*, 150 Idaho 209, 227-28, 245 P.3d 961, 979-80 (2010).

## III.

## ANALYSIS

Hillenbrand argues the district court: (1) abused its discretion by allowing a portion of an officer's testimony that lacked foundation and relevance; (2) abused its discretion by allowing an officer to testify that the State did not disclose as a witness before trial; (3) committed reversible error by denying Hillenbrand's motion for a mistrial after an officer testified that Hillenbrand

5

faced a felony charge; and (4) abused its discretion by ordering fifty additional hours of community service beyond the statutory minimum without substantial and competent evidence.

## A.    The Admission of Officer Childers' Statements, If Erroneous, Was Harmless

Preliminarily, we note that only two of the appealed from statements were objected to. Hillenbrand concedes that trial counsel could have objected to Childers' initial response as non-responsive but did not do so.  Generally, this Court will not consider an alleged error on appeal unless a timely objection to the alleged error was made at trial.  I.R.E. 103(a)(1); *State v. Bingham*, 116 Idaho 415, 423, 776 P.2d 424, 432 (1989).  For an objection to be preserved for appellate review, either the specific ground for the objection must be clearly stated, *State v. Norton*, 134 Idaho 875, 880, 11 P.3d 494, 499 (Ct. App. 2000) or the basis of the objection must be apparent from the context, *State v. Cannady*, 137 Idaho 67, 72, 44 P.3d 1122, 1127 (2002).  "Objecting to the admission of evidence on one basis does not preserve a separate and different basis for exclusion of the evidence."  *Norton,* 134 Idaho at 880, 11 P.3d at 499.  In this case, there was no objection to two of Officer Childers' responses, nor was there a continuing objection to the line of questioning.  Consequently, only those two answers to which Hillenbrand objected to are preserved for review.  The answers which we must analyze are the following:

> STATE:      And one of the questions the defense attorney asked you was what percentage of people become nervous when you ask them about drugs.
> DEFENSE:    Objection.  Misstates the question.
> COURT:      I'll allow it.  Go ahead and answer.
> CHILDERS:   Most people become somewhat nervous about it but they don't get a heightened nervous about it.  I'll ask 90 percent of the people that I conduct a traffic stop with depending on their answers of where they're coming and going from.
> STATE:      Could you expand on that just a little bit?  So what percentage becomes extra nervous when you ask them about drugs?
> DEFENSE:    Objection. Foundation. Relevance.
> STATE:      She opened the door, Your Honor.
> DEFENSE:    I never asked a question about percentage.
> COURT:      I'll go ahead and allow the question.  It's overruled.
> CHILDERS:   Maybe 10 percent of the people get that nervous about it.

We need not decide whether the admission of the evidence was erroneous because it was harmless when viewed in the context of all the other evidence in the case.  The harmless error test as set forth in *Perry* is:  where a constitutional violation occurs at trial, and is followed by a contemporaneous objection, a reversal is necessitated, *unless* the State proves beyond a

6

reasonable doubt that the error complained of did not contribute to the verdict obtained. *Perry*, 150 Idaho at 221, 245 P.3d at 973. In other words, the reviewing court must consider the trial record as a whole and ignore errors that are harmless, including most constitutional violations. *United States v. Hasting*, 461 U.S. 499, 509 (1983). In *Hastings*, the Court explained how to apply the *Chapman*[1] test: "The question a reviewing court must ask is this: absent the [error], is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?" *Hastings*, 461 U.S. at 510-11.

Absent the two challenged statements in the trial, Hillenbrand would still have been found guilty. Hillenbrand does not challenge his stop, the general testimony that he was nervous, or that the methamphetamine was found underneath his seat. The first of the challenged statements is not particularly prejudicial, as the officer said he asks about ninety percent of all the people he stops about drugs. That the jury heard that ten percent of people get extra nervous, as opposed to the unobjected-to answer that twenty percent of the people stopped have heightened nervous, would not affect the outcome of the trial. The jury rejected Hillenbrand's testimony that he did not know the substance was under the seat or that the substance was methamphetamine. There is no reason to believe the jurors would accept Hillenbrand's explanation had the challenged statements been excluded. Even absent the two challenged answers, the jury still heard unobjected-to testimony about Hillenbrand's nervousness and that almost all of the individuals that get extra nervous possess a controlled substance. Thus, to the extent the district court erred in admitting the challenged testimony, any such error was harmless.

**B.     The District Court Did Not Abuse Its Discretion by Admitting the Late-Disclosed Testimony of Officer Otto**

Hillenbrand argues the district court abused its discretion by allowing Officer Otto to testify despite the State's failure to explicitly name him in its witness list. Hillenbrand maintains that the statement found on the State's preceding disclosures, "ANY OTHER WITNESS LISTED IN THE REPORTS," was not sufficiently specific to comply with Idaho Criminal Rule 16(b)(6). Thus, the district court did not act consistently with I.C.R. 16(b)(6) when it permitted Officer Otto to testify or when it failed to impose a different discovery sanction. Hillenbrand also asserts the district court abused its discretion by not conducting an analysis, on the record, balancing the State's culpability of nondisclosure with the resulting prejudice to

---

[1]     *Chapman v. California*, 386 U.S. 18 (1967).

Hillenbrand in light of the goals of encouraging compliance with discovery and punishing misconduct.

Idaho Criminal Rule 16(b)(6) provides: "On written request of the defendant, the prosecuting attorney must furnish to the defendant a written list of the names and addresses of all persons having knowledge of relevant facts who may be called by the state as witnesses at the trial." "When a party has failed to comply with discovery the trial court may impose sanctions including, in appropriate circumstances, the exclusion of a witness." *State v. Wilson*, 158 Idaho 585, 588, 349 P.3d 439, 442 (Ct. App. 2015). "To determine whether a sanction will be imposed and what it will be, the trial court must weigh the equities, balancing the culpability of the disobedient party with the resulting prejudice to the innocent party in light of the twin aims of the sanction power": "encouraging compliance with discovery and punishing misconduct." *Id.* Demonstrating prejudice "ordinarily requires that the complaining party demonstrate that the late disclosure hampered his ability to meet the evidence at trial, had a deleterious effect on his trial strategy, or that it deprived him of the opportunity to raise a valid challenge to the admissibility of evidence." *State v. Allen*, 145 Idaho 183, 186, 177 P.3d 397, 400 (Ct. App. 2008) (citations omitted). "The choice of an appropriate sanction, or whether to impose a sanction at all, for a party's failure to comply with a discovery request or order is within the discretion of the trial court." *Wilson*, 158 Idaho at 588, 349 P.3d at 442. A trial court's failure to analyze whether a party would suffer prejudice due to late disclosure constitutes an abuse of discretion. *State v. Lamphere*, 130 Idaho 630, 634, 945 P.2d 1, 5 (1997).

This Court must first determine whether the State violated I.C.R. 16(b)(6) by failing to specifically identify Officer Otto as a witness as opposed to the catch-all phrase "ANY OTHER WITNESS LISTED IN THE REPORTS." It did. The State argues that Hillenbrand conceded that Officer Otto was disclosed as a witness because Hillenbrand acknowledged that Officer Otto's name was disclosed in discovery. However, just because Hillenbrand agreed that Officer Otto was disclosed in discovery, and to be clear, that means that Officer Otto either authored or was named in police reports contained in the State's discovery responses, was not a concession that Officer Otto was disclosed as a witness pursuant to I.C.R. 16(b)(6). Even if Officer Otto had been listed by name in previous discovery responses, that does not resolve the issue in this case. The issue in this case is whether the State's trial witness list, as opposed to a discovery response, implicitly or explicitly notified Hillenbrand that Officer Otto would be called as a witness. It did

8

not. Consequently, the State was limited to presenting the listed witnesses in the final witness list unless it could meet the legal requirements for calling an undisclosed witness.

Interpretation of a court rule must begin with the plain, ordinary meaning of its words. However, interpretation of the rule's language may be tempered by the purpose of the rule. The Court will not interpret a rule in a way that would produce an absurd result. Instead, consistent with the intent of the Idaho Criminal Rules to provide for the just determination of every criminal proceeding, the Court will construe the rules to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay. I.C.R. 2(a); S*tate v. Montgomery*, 163 Idaho 40, 44, 408 P.3d 38, 42 (2017).

Idaho Criminal Rule 16 is clear about what information the parties are required to disclose, and the rule does not permit general disclosures such as the disclosure used in this case. The purpose of I.C.R. 16 is to promote fairness and candor and to prevent surprise at trial. *See State v. Morin*, 158 Idaho 622, 626, 349 P.3d 1213, 1217 (Ct. App. 2015). This Court recognizes the practical reality of trials and that early in a case, a party may not know exactly which witnesses it will call or how evidence will be presented because trial strategy unfolds as evidence is tested, witnesses are interviewed, and theories are developed. However, as the case progresses, parties necessarily decide which witnesses to present, what order to present those witnesses, and how to develop their testimony. Certainly by the time the parties reach the final pretrial or status conference, they have winnowed down the witnesses they will present in their cases-in-chief from all possible witnesses. This allows the parties to prepare and allows the trial court to appropriately allocate resources and time. Here, in its witness list, the State listed four witnesses but did not include Officer Otto. By failing to list Officer Otto, the State indicated that Officer Otto would not testify. The State's preceding discovery disclosures which included the phrase, "ANY OTHER WITNESS LISTED IN THE REPORTS," were not witness lists. The only witness list filed by the State did not include Officer Otto as a potential witness. Thus, after the State's witness list notified Hillenbrand of the witnesses he could expect at trial, Hillenbrand had no reason to believe the State would call Officer Otto or any other witnesses that were mentioned in the police reports but not included in the State's trial witness list. The State did not comply with the plain language of I.C.R. 16(b)(6), which constitutes a discovery violation.

Hillenbrand further argues that an objection under I.C.R. 16(b)(6) triggers a duty for the district court to balance the late disclosure and the reasons therefore with the resulting prejudice

9

to Hillenbrand. The State argues that Hillenbrand was required to make some showing of prejudice before the Court needed to engage in any balancing and because Hillenbrand did not make any such showing, he cannot demonstrate the district court erred.

When an issue of late disclosure of prosecution evidence is presented, the inquiry on appeal is whether the lateness of the disclosure so prejudiced the defendant's preparation or presentation of his defense that he was prevented from receiving a fair trial. *State v. Pacheco*, 134 Idaho 367, 370, 2 P.3d 752, 755 (Ct. App. 2000); *State v. Johnson*, 132 Idaho 726, 728, 979 P.2d 128, 130 (Ct. App. 1999); *State v. Canelo*, 129 Idaho 386, 389, 924 P.2d 1230, 1233 (Ct. App. 1996). The defendant bears the burden of establishing prejudice by showing that there is a reasonable probability that, but for the late disclosure of evidence, the result of the proceedings would have been different. *Pacheco*, 134 Idaho at 370, 2.P.3d at 755.

Following Hillenbrand's objection, the district court held a bench conference where the State attempted to explain the disclosure was not late as Officer Otto had been disclosed in discovery. This bench conference was Hillenbrand's opportunity to articulate any prejudice he would suffer, but he made no such showing. Hillenbrand was familiar with this requirement because earlier in the case, Hillenbrand challenged the disclosure of the State's expert witness, the lab analyst, and argued the testimony would prejudice his case. Because Hillenbrand failed to articulate any prejudice as it related to the testimony of Officer Otto, the district court could not determine whether Hillenbrand was hampered in his ability to meet the evidence at trial, had his trial strategy deleteriously effected, or was deprived of the opportunity to raise a valid challenge to the admissibility of the witness's testimony. Therefore, because Hillenbrand did not articulate any prejudice resulting from the late disclosure, there was nothing for the court to weigh against the late disclosure. Consequently, the district court did not err in admitting the testimony.

## C. The Admission of the Word "Felony" Did Not Constitute Reversible Error

Hillenbrand argues the district court committed reversible error by denying Hillenbrand's motion for a mistrial after an officer testified that Hillenbrand faced a felony charge. The State argues that although Officer Otto's statement was error, it did not constitute reversible error.

In criminal cases, motions for mistrial are governed by I.C.R. 29.1. A mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the

defendant and deprives the defendant of a fair trial. I.C.R. 29.1(a). Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983).

It was error for the officer to comment that Hillenbrand's charge was a felony. Nonetheless, we are not persuaded by Hillenbrand's arguments that the reference allowed the jury to concern itself with any potential penalty or punishment because Hillenbrand declined any curative instruction.

Additionally, we cannot find that in light of the evidence of Hillenbrand's guilt, as outlined above, that this one-time reference had a continuing impact on the trial. Consequently, the district court did not err in denying Hillenbrand's motion for a mistrial.

## D. The District Court Erred in Increasing Hillenbrand's Community Service Hours

Hillenbrand argues that the district court abused its discretion by sentencing him to fifty additional community service hours beyond the statutory minimum. This Court notes the district court's decision appears to rely solely on the State's uncorroborated argument regarding Hillenbrand's behavior in the presence of a juror after trial. In this case, imposing a greater sentence without substantial and competent evidence of the allegation is an abuse of discretion.

The court may consider hearsay evidence, evidence of previously dismissed charges against the defendant, or evidence of charges which have not yet been proved so long as the defendant has the opportunity to object to, or to rebut, the evidence of his or her alleged misconduct. *State v. Campbell*, 123 Idaho 922, 926, 854 P.2d 265, 269 (Ct. App. 1993). *See also* I.C.R. 32(e)(1), (2).

The State knew of these allegations at least two months before the sentencing date but did not share the information with the district court or Hillenbrand until the parties were in the sentencing hearing. The name of the juror was not disclosed and Hillenbrand had no opportunity

11

to rebut the evidence in a meaningful way. Additionally, while the district court can consider hearsay evidence, this was hearsay evidence thrice over: the State said the bailiff said a juror said Hillenbrand made some inappropriate statements immediately following the jury trial. There was no contemporaneous memorialization of the incident. Moreover, it is clear from the record the district court relied on the State's allegations as the justification for imposing the additional fifty hours. The State asked for 100 hours as a result of the conviction and then asked for an additional fifty hours as "some measure" for the alleged comment, "just basically to make the statement to him that it's inappropriate to do that after a trial." Defense counsel objected and noted the speculative nature of the comment and that Hillenbrand denied making the comment. After talking about the nature of jury service, the district court imposed 150 hours of community service. It is clear the court relied on the statement made by the prosecutor and adjusted the required 100 hours of community service upwards to account for Hillenbrand's alleged statement. In the context of this case, this constitutes an abuse of discretion and we reduce the number of community service hours Hillenbrand must serve from 150 to 100 hours.

**IV.**

**CONCLUSION**

To the extent that the admission of two of Officer Childers' statements were erroneously admitted, the admission of the evidence was harmless; the district court did not abuse its discretion by admitting the testimony of the late-disclosed witness because Hillenbrand failed to establish any prejudice; and the district court did not commit reversible error in failing to grant Hillenbrand's motion for a mistrial. The district court erred in imposing an additional fifty hours of community service based on the State's uncorroborated statement, which was hearsay thrice over; consequently, we vacate the additional fifty hours of community service imposed on Hillenbrand. Thus, the judgment of conviction is affirmed in part and vacated in part. The case is remanded to the district court for proceedings consistent with this opinion.

Chief Judge GRATTON and Judge BRAILSFORD **CONCUR**.

12